BUCKBERG, Respondent, v. WASHBURN-CROSBY
COMPANY, Appellant.

**St. Louis Court of Appeals, January 30, 1906.**

1. **SALES: Quotation of Price: Contract.** A mere quotation of
a price does not import an assent to sell at that price, and such
quotation by the seller, together with an order by the buyer,
does not constitute a contract of sale.

2. ———: ———: ———. But where a letter quoted the price of
·flour and stated that the owner would fill the inquirer's order
for flour at the price quoted if the latter would wire his order
immediately on receipt of the letter, such a letter with a tele-
graphed order for a certain amount of flour constituted a com-
plete contract.

3. ———: ———: ———: **Mistake.** Where in such a case the
letter made a mistaken quotation of a price and it was ap-
parent on the face of the letter that the price named was a
typographical error, the letter and an order for flour in pur-
suance of it did not constitute a contract.

Appeal from Louisiana Court of Common Pleas.—*Hon.
David H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*Matson & May* for appellant.

The letter of September 24, 1904, from appellant to
respondent, did not form the basis for this suit. It was
merely a "quotation of prices." The beginning of the
attempted contract is the telegram dated September 26,
1904, from Buckberg to the company. The terms of the
telegram were never accepted and there was no "meet-
ing of minds" upon a completed contract. The price of-
fered, and the price, at which the flour was shipped,
were different. 7 Am. and Eng. Ency. of Law (2 Ed.),
page 138, par. 2; James & Sons v. Fruit Jar & Bottle
Co., 69 Mo. App. 207; 24 Am. and Eng. Ency. of Law

(2 Ed.), page 1034; Herron v. Foley, 62 Wis. 584; Everson v. Granite Co. 65 Vt. 659; Griffin v. O'Neal, 48 Kans. 117; Allen v. Kerwin (Pa. Sup.), 28 A. 495, 159 Pa. St. 612, 34 W. N. C. 29; Marshall v. Eisen Vineyard Co. (Com. Pl. N. Y.), 26 N. Y. S. 627, 7 Misc. Rep. 674; Denton v. McInnis, 85 Mo. App. 542; Lancaster v. Elliott, 28 Mo. App. 86.

*Ball & Sparrow* for respondent.

STATEMENT.—In 1904, plaintiff was engaged in the bakery and restaurant business, in the city of Louisiana, Missouri, and the defendant was engaged in the manufacture of flour, in Minneapolis, Minnesota. On September 21, 1904, plaintiff wrote defendant, making the following inquiry: "Can you tell me if flour is going to get any cheaper, or still going to soar skyward? Please let me know." Defendant answered this inquiry by the following letter:

"Minneapolis, Minn., Sept. 24, 1904.
"Mr. William Buckberg, Louisiana, Mo.

"Dear Sir: Replying to your inquiry of the twenty-first would state, that we have absolutely no way of telling whether flour is going to advance or not. However, judging from the small amount of wheat that was raised in this country this year, and the large amount of that that is not fit for milling purposes, we should think that higher prices for flour would prevail in the future. For instance, on to-day's market, Gold Medal delivered Missouri points, is worth $5.10 jute, or $6 bulk. Wish we could give you more definite information but that is simply impossible and the quotation made above is for immediate wire acceptance.

"Yours truly,
"WASHBURN-CROSBY CO."

On the day plaintiff received the above letter he wired defendant as follows:

"9—26, 1904.

"To Washburn-Crosby Co., Minneapolis, Minn.

"Send hundred fifty barrels Gold Medal jute at your quotation of Sept. twenty-fourth.

"WM. BUCKBERG."

On receipt of this telegram, defendant shipped to itself, a carload (150 barrels) of Gold Medal flour, in jute sacks, and sent a copy of the invoice to plaintiff. To the original invoice and bill of lading, defendant attached a draft drawn on plaintiff and mailed it to the Mercantile Bank at Louisiana. The flour was billed at six dollars and ten cents per barrel and the draft was drawn accordingly. After the arrival of the flour at Louisiana and after the draft was presented by the bank to the plaintiff, he wired defendant as follows:

"Oct. 4, 1904.

"To Washburn-Crosby Co., Minneapolis, Minn.

"Flour arrived. You quoted me Gold Medal at five ten. Why have you charged me six ten. Wire answer.

"WM. BUCKBERG."

In response to this telegram defendant wired plaintiff as follows:

"10—4, 1904.

"Dated Minneapolis, Minn., 4.

"To Wm. Buckberg, La., Mo.

"Five ten error, see our letter twenty-sixth, six ten best can do, writing.

"WASHBRN-CROSBY."

And following the telegram, the letter quoted below was sent:

"Minneapolis, Minn., Oct. 5, 1904.

"Wm. Buckberg, Esq., Louisiana, Mo.

"Dear Sir: Replying to your wire of the fourth we have wired you that price of $5.10 jute in our letter of the twenty-fourth was an error. By looking at this letter very carefully you will see very clearly the price of $5.10 could not be right as we say '$5.10 jute or $6.00 bulk,' and you know very well that bulk flour is not

worth 90c per barrel more than the flour in jute. Furthermore, we call your attention to our letter of the twenty-sixth, acknowledging receipt of your order, in which we have stated plainly that we have entered order for 210-140s Gold Medal, baker's use, at $6.10 net in sacks, delivered. $6.10 is absolutely the best we can do on this flour.

"This is a close price and we are very sure that it will make you a profitable purchase. We trust that you will take care of the car promptly upon its arrival. However, if you are not in position to do this let us hear from you promptly and we will have the car diverted.

"Yours truly,
"WASHBURN-CROSBY CO."

The foregoing exhibits constituted all the written evidence in the case that passed between plaintiff and defendant. William Buckberg further testified that he was familiar with the value and the price of flour in this community, at the time of the above mentioned transactions, and that he had been buying flour at times from this company and other persons for several years. The defendant attempted to show by him that he knew, when he received its letter, that the quotation of the flour therein was an error and mistake, and that he attempted to take advantage of this mistake. The court sustained objections to this testimony and the defendant then and there saved its exceptions.

The petition alleges that plaintiff contracted with and purchased of defendant one hundred and fifty barrels of Gold Medal brand flour, in jute sacks, at five dollars and ten cents per barrel, to be delivered by defendant at the city of Louisiana, and that defendant had failed and refused to deliver the flour at the price agreed upon, to plaintiff's damage in the sum of one hundred and fifty dollars.

The answer was a general denial.

At the close of the evidence, the court instructed the jury that under the pleadings and the evidence in the

case, the verdict must be for the defendant. The verdict was rendered for defendant, but on motion of plaintiff it was set aside and a new trial granted. Defendant appealed from the order granting a new trial.

BLAND, P. J. (after stating the facts.)—It will be observed that defendant's letter of September twenty-fourth contains no direct offer to sell flour in jute sacks, at five dollars and ten cents per barrel, but that it is a mere quotation of that day's market. On the strength of this quotation plaintiff telegraphed defendant as follows: "Send hundred fifty barrels Gold Medal jute at your quotation of Sept. twenty-fourth." The flour was shipped, consigned to defendant, and billed at six dollars and ten cents per barrel instead of five dollars and ten cents, the market price previously quoted. On the trial the learned circuit judge held that the evidence failed to prove that a contract for the sale and delivery of the flour had been consummated, but after the verdict changed his view and granted a new trial. Which of these views is correct, is the question presented for decision by the appeal.

In Am. & Eng. Ency. of Law (2 Ed.), vol. 7, p. 138, par. 2, it is said: "A quotation of prices is not an offer to sell, in the sense that a complete contract will arise out of the mere acceptance of the rate offered or the giving of an order for merchandise in accordance with the proposed terms. It requires the acceptance by the one naming the price, of the order so made, to complete the transaction. Until thus complete there is no mutuality of obligation." In volume 24, of the same work, at page 1029, it is said: "The offer must be distinct as such, and not merely an invitation to enter into negotiations upon a certain basis."

"Merely naming a price does not necessarily import an assent to sell to the inquirer at that price," says Benjamin in his work on Sales (6 Ed.), page 73. He il-

lustrates the text by saying: "In a late case (Smith v. Gowdy, 8 Allen 566) S. wrote K., 'How many rags have you on hand, and your price for them?' G. replied, 'We have about a ton, and our price is three and one-half cents.' S. answered, 'We will take the rags at the price you name.' To which G. made no answer, but, when called upon, refused to send the rags. Held, no sale; the first real offer being from S. that he would take the rags, and G. never having agreed to send them."

The Kansas City Court of Appeals, in James & Sons v. Fruit Jar & Bottle Co., 69 Mo. App. 1. c. 213, quoting from Bruner v. Wheaton, 46 Mo. 1. c. 366, held: "To constitute a valid contract there must be a mutual assent of the parties thereto, and they must assent to the same thing in the same sense."

But the letter does more than quote the market price of flour; in effect, it said to plaintiff that defendant would fill his order for flour at the price quoted, if he would wire his order immediately on receipt of the letter. Plaintiff, on receipt of the letter, immediately wired his order, hence there was a complete contract for the flour, unless it failed or is invalid on account of a mistake in quoting the price of flour, in jute sacks, patent on the face of defendant's letter of September twenty-fourth. That the quotation of Gold Medal flour in jute sacks at $5.10 per barrel is a mistake or typographical error, we think is beyond doubt. The same brand of flour was quoted at six dollars per barrel, in bulk; in sacks its market value could not have been less than six dollars, but was necessarily six dollars per barrel, plus the value of the sacks and labor of sacking it. Plaintiff was an experienced buyer of flour and must have known the quotation was an error, therefore, his order was an attempt on his part to take advantage of defendant's error and make a profit for himself. That a binding contract cannot arise in such circumstances is too plain for argument. The shipment was to defendant, not to plaintiff, and he was not authorized to re-

ceive the flour from the carrier until he first paid for it at the rate of six dollars and ten cents per barrel. The shipment was an offer, and the only valid one made by defendant, to sell the flour to plaintiff. He refused to take the flour on the terms offered, therefore, there was no contract made for its sale.

The judgment is reversed and the cause remanded with directions to the circuit court to overrule the motion for new trial and enter judgment on the verdict of the jury. All concur.