FRANSEN, Plaintiff, v. STATE, et al, Defendants.

(240 N. W. 503.)

(File No. 7168.   Opinion filed January 25, 1932.)

*Tait & Morgan,* of Gettysburg, for Plaintiff.

*M. Q. Sharpe,* Attorney General, and *Benjamin D. Mintener,* Assistant Attorney General, for Defendants.

CAMPBELL, P. J. Plaintiff has instituted this action in this court predicating jurisdiction and authority to sue upon section 2109, R. C. 1919, reading as follows: "It shall be competent for any person deeming himself aggrieved by the refusal of the state auditor to allow any just claim against the state, to commence an action against the state by filing with the clerk of the supreme court a complaint setting forth fully and particularly the nature of the claim. He shall at the same time file an undertaking in the penal sum of five hundred dollars, with two or more sureties, to be approved by the state treasurer, to the effect that he will indemnify the state against all costs that may accrue in such action, and pay to the clerk of said court all costs in case he shall fail to prosecute his action, or to obtain a judgment against the state; and thereupon the action shall be placed upon the calendar of said court."

The cause now stands for our disposition upon demurrer by defendant state of South Dakota to plaintiff's complaint challenging the sufficiency of the facts therein stated to constitute a cause of action, and challenging jurisdiction of this court over the defendant

and the subject of the action. We therefore recite as facts (confessed for present purposes by the demurrer) the allegations of the complaint and necessary inferences therefrom, in substance, as follows:

In 1921, the state of South Dakota took two mortgages upon a quarter section of land in Sully county; the first mortgage (which we will hereafter call the rural credit mortgage) securing a rural credit loan, and the second mortgage (which we will hereafter call the land settlement mortgage) securing a land settlement loan. Both mortgages were duly recorded in 1921. After 1925 (see chapter 272, Laws 1925), the rural credit board was in charge of both mortgages. In November, 1929, default existed in the terms and conditions of both mortgages, and defendant state, through the agency of the rural credit board, undertook to foreclose by advertisement the second or land settlement mortgage. Notice of foreclosure sale was published pursuant to law, containing all information required by the provisions of section 2880, R. C. 1919. The notice did not give, or purport to give, any information, either directly or inferentially as to whether the mortgage being foreclosed was a first lien on the premises. The land was advertised to be sold by the sheriff of Sully county November 20, 1929. On that date the value of the land was $3,200. The principal and interest due on the second mortgage being foreclosed was $2,553.37. The principal and interest due on the prior or rural credit mortgage (which was also ripe for foreclosure by virtue of default and condition broken) was approximately $2,900. If the state of South Dakota acquired title to the premises in question by purchase upon the foreclosure of the land settlement mortgage, then by virtue of statute (section 21, chapter 187, Laws 1927) the rural credit first mortgage might be canceled and the accounts of the rural credit board might be credited with the land in lieu of the mortgage. Prior to the sale, the rural credit board had directed the sheriff of Sully county to bid at the sale, in behalf of the state, a sum equal to accrued principal and interest on the land settlement mortgage, plus statutory costs of sale.

Plaintiff is a farmer, comparatively inexperienced in business, knowing little of real estate titles. He was familiar with the land in question, had a little money to invest, and believed the land at that time to have a value of twenty to twenty-five dollars per acre.

He thought that the state of South Dakota could lawfully take only first mortgages. He believed therefore that the fact that the mortgage being foreclosed was given to and being foreclosed by the state of South Dakota necessarily indicated that it was a first lien. He did not in fact have any knowledge of the existence of the first, or rural credit, mortgage, though of course chargeable with constructive notice thereof from the record. He made no effort to investigate the title in any manner, but acted entirely in reliance on his belief that the mortgage being foreclosed was in fact a first lien. He attended the sale and made a bid of $2,720, being $3.29 more than accrued principal, interest, and costs of sale. The land was struck off and sold to him. He paid his money and received a certificate of sale. The money, less overplus and costs of sale, went into the rural credit funds. Plaintiff did not learn of the existence of the first mortgage until January, 1930, when demand was made upon him by the rural credit board for payment of certain delinquent installments thereon if he wished to avert foreclosure. He immediately consulted counsel, and, within a very few days, advised the rural credit board in writing of the mistake under which he had labored when he made his bid, tendered to the board an assignment and transfer of his certificate of sale, and requested the return of his money. Receiving no satisfactory response, he shortly thereafter gave formal notice of rescission, again tendering the certificate and demanding his money. Thereafter he filed a claim with the state auditor for the money in question, and, the same being disallowed, he instituted this action, in which he again tenders transfer of the certificate of sale and prays the recovery of his money.

We will consider first the question raised by the demurrer as to whether the facts alleged are sufficient to entitle plaintiff to the relief sought.

On this phase of the case, defendant contends that plaintiff finds himself in his present unenviable position solely because of his own negligence, which, of course, is true. On this premise defendant argues that equity will never relieve from the results of a unilateral mistake of fact arising from the utter failure of the party making the mistake to exercise ordinary care and diligence. Mistake of fact as ground for equitable relief is discussed at some length in 23 Har. L. Rev. 608, and is the subject of an extensive

case note in 59 A. L. R. at p. 809. We doubt if the rule that equity will not relieve from unilateral mistake occasioned by negligence is as inflexible as defendant maintains. It rather seems the trend of the more modern decisions to grant or withhold relief, according to the circumstances of the particular case. Cf. Home Investment Co. v. Clarson, 21 S. D. 72, 109 N. W. 507; Bennett v. Campbell, 48 S. D. 285, 204 N. W. 177.

In the instant case, plaintiff's erroneous impression that the state could hold only first mortgages is by no means a sufficient excuse for his negligence in failing to ascertain whether or not the mortgage being foreclosed was in fact a first lien of record. The fact remains, however, that plaintiff, negligent as he was, did make this bid and pay his money on the assumption that the land settlement mortgage was a first lien. He paid practically the value of the property. Defendant foreclosed the land settlement mortgage for almost the value of the property with full knowledge that it was the holder of a prior mortgage on the premises for an even greater amount. It was not reasonable to suppose that substantial bids would be made at the foreclosure sale under the circumstances, and defendant did not anticipate that such bids would be made, but expected to be compelled itself to bid in the premises, and had so directed the sheriff. There were no bidders other than plaintiff. The mistake made by plaintiff relates to a most material feature of his purchase. If plaintiff is refused relief, in substance, he has parted with his money for nothing. He must either pay off the first mortgage, thus paying double value for the land, or he must suffer it to be foreclosed and thus lose the land and be out of pocket the full sum he paid the state, and which he is now seeking to recover. Clearly, plaintiff will be most heavily penalized, so far as he is concerned, if he must abide the consequences of his mistake. On the other hand, but for plaintiff's negligent mistake he would have made no bid at the foreclosure sale, and defendant state of South Dakota, paying out no money except actual costs of sale, would have received the certificate of sale. If defendant refunds his money to plaintiff and takes his certificate of sale, it will be in no manner prejudiced, and all parties will stand precisely where they would have been but for plaintiff's mistake. Under these circumstances, when the statu quo can be so simply restored without prejudice to any one, and

plaintiff will be so heavily penalized if it is not, it seems grossly unconscionable to permit the one party to profit so inequitably by a mistake of the other, however negligent.

■ When sovereignty sees fit to engage in business enterprises, surely it should expect to be required to observe the same rules of fair dealing to which any business corporation is held. Common business honesty forbids that any one, including the state, should accept money with knowledge that it would not be offered unless the party offering it was laboring under a mistake. The underlying equitable principle applicable to this case is that good conscience will not permit the snapping up of an offer or bid knowing that it was made in mistake. Cf. Tyra v. Cheney, 129 Minn. 428, 152 N. W. 835; Hudson Structural Steel Co. v. Smith & Rumery Co., 110 Me. 123, 85 A. 384, 43 L. R. A. (N. S.) 654; Buckberg v. Washburn-Crosby Co., 115 Mo. App. 701, 92 S. W. 733; Barteldes Seed Co. v. Bennett-Sims Mill & Elevator Co. (Tex. Civ. App.) 161 S. W. 399.

■■ In the instant case, the mere offer of practically the value of the land, at a sale under foreclosure of a second mortgage, was ample notice that the offerer did not, as a matter of fact, know that the foreclosing mortgagee held another and prior mortgage on the premises for an even greater sum. Good conscience required that such a bid, under all the circumstances alleged by this complaint, be not accepted without bringing the prior incumbrance to the attention of the bidder. If it be urged that defendant did not know of plaintiff's bid because it did not attend the sale, the answer is that defendant should have attended the sale, by proper agent or attorney, and will not be heard to plead ignorance of facts which it would have known if it had so done. Previously to 1891, the actual sale upon mortgage foreclosure might be made by the person appointed for that purpose in the mortgage, or by the sheriff or his deputy. Since chapter 84, Laws 1891 (section 2881, R. C. 1919), the sale must be made by the sheriff or his deputy. This, however, refers only to the actual process of selling, issuing certificate of sale, accepting redemption, etc. The exercise of the power of sale in its broader sense is in the person to whom the mortgagor gives it; that is, the mortgagee (or in proper case his executor or assignee). It is for the mortgagee to determine when the power of sale will be exercised and to give notice of the sale.

Section 2877, R. C. 1919. It is the duty of the mortgagee to know what goes on at the sale, and to direct and supervise the same, and he should be present at the same in person or by agent or attorney. See Simonton v. Conn. Mutual Life Ins. Co., 90 Minn. 24, 95 N. W. 451. Cf. also Brown v. Hall, 32 S. D. 225, 142 N. W. 854. Failing to be present at the sale, upon the facts here pleaded, the least defendant in good conscience should have done was to accept the certificate of sale and refund such of plaintiff's money as it had received, when he, acting promptly, so requested.

Defendant suggests that it is doubtful if there is any legal authority for the rural credit board to reimburse plaintiff out of rural credit funds. The rural credit board is authorized (section 4, c. 187, Laws 1927) to disburse money, inter alia, for "all operating expenses" of the department. To refund to plaintiff, upon assignment and surrender of the certificate of sale which he has tendered, the money which he paid under mistake, which went into the rural credit funds, and which in equity and good conscience ought never to have been accepted or retained, is certainly a legitimate operating expense of the department. We are satisfied that the allegations of the complaint, if proved, are sufficient to entitle plaintiff to relief, and to that extent the demurrer will be overruled.

Upon the jurisdictional grounds, however, we believe that the demurrer is well taken. Plaintiff predicates his action upon the provisions of section 2109, R. C. 1919, previously quoted. It was the intention of that section, pursuant to the authority conferred upon the Legislature by Constitution of South Dakota, art. 3, § 27, to give this court original jurisdiction in certain actions against the state, which could not otherwise be maintained. In cases where the Legislature has made provision that the state may be sued in the circuit court, the action should be there instituted, and the case can no longer fall within the purview of section 2109 permitting original action in this court. The original Rural Credit Act was chapter 333, Laws 1917, and by immediate amendment thereto, by chapter 334, Laws 1917, it was provided (and by virtue of section 9, chapter 187, Laws 1927, it is still provided) "that in all matters arising under this chapter the State of South Dakota may sue and be sued as a private individual." Chapter 187, Laws 1927, is a general act providing for the continuance,

maintenance, and operation of the rural credit system, creating a rural credit board, and defining the power, duties, and functions thereof. Plaintiff's cause of action arises out of matters relating to a mortgage foreclosure authorized by that chapter and is, we think, a matter "arising under" the chapter, within the meaning of the provision above quoted. By that provision as to matters so arising, we think the state must be held to have waived its sovereign immunity and consented to a determination of its rights and liabilities in the same manner and by the same forums "as a private individual." We are therefore of the opinion that plaintiff could and should have instituted this action against the state of South Dakota as defendant in the circuit court, rather than seeking to proceed originally in this court.

So much of the demurrer as goes to the jurisdictional ground must therefore be sustained, and, inasmuch as the complaint is not susceptible of amendment to overcome that objection, the order of this court will be that this cause be dismissed without prejudice, and without taxation of costs.

ROBERTS, J., disqualified and not sitting.
POLLEY, WARREN, and RUDOLPH, JJ., concur.