NICKEL, Appellant, vs. THERESA FARMERS CO-
OPERATIVE ASSOCIATION, Respondent.

*September 11—October 16, 1945.*

*Paul E. Bornemann* of Milwaukee, for the appellant.

For the respondent the cause was submitted on the brief of *Husting & Pike* of Mayville.

FAIRCHILD, J. The question upon which the affirmance of the judgment on the counterclaim depends is whether on September 6, 1941, plaintiff promised to supply all the lumber needed for defendant's building at the prices quoted. There is sufficient evidence to sustain the finding that there was a subsequent delivery and acceptance by the defendant of a quantity of lumber at the prices quoted on September 6, 1941, so that the alleged oral contract of September 6th is

taken out of the statute of frauds by partial delivery, sec. 121.04, Stats. Unless there was concluded an actual agreement between the parties the subsequent delivery and acceptance of a part of material contracted for can have no effect in validating the contract. The delivery would be considered as an individual complete order.

The circumstances disclosed by the testimony and accepted by the court as establishing the material facts are: That on September 6, 1941, Mr. Eckman, manager of defendant, went to the office of the plaintiff lumber company to make arrangements to purchase lumber necessary for the construction of a warehouse at Theresa, Wisconsin; that he had with him a rough sketch of the building to be constructed. He testified that when he showed Mr. Nickel the proposed plans "he recommended to me that it was his idea that according to the laws of the state of Wisconsin, the architect should draw the plans. . . ." Mr. Eckman then told Mr. Nickel that he knew lumber was somewhat scarce and it was necessary to get it before any difficulty arose. Mr. Eckman then said he would get in touch with the architect as suggested and call upon Mr. Nickel to have the lumber sent out to him. Mr. Nickel then wrote quotations of prices on the back of a business card and gave it to Mr. Eckman. Thereafter, part of the lumber necessary was delivered to the defendant priced on the invoice at sums which varied from the quotation of September 6th. When this was called to the attention of Mr. Nickel, there is testimony that he said: "Well, change them, change them to the prices *they're supposed to be.*" It is on this set of circumstances that the judgment reached below must stand or fall.

It is difficult to determine when a quotation of prices is a definite offer and when it is merely a preliminary step in negotiations leading up to an offer. Indifference to details and a lack of appreciation of the requirements of a formal contract has resulted in leaving much business depending

upon implied contracts. "From the nature of the subject, the question whether certain acts or conduct constitute a definite proposal upon which a binding contract may be predicated without any further action on the part of the person from whom it proceeds or a mere preliminary step which is not susceptible, without further action by such party, of being converted into a binding contract depends upon the nature of the particular acts or conduct in question and the circumstances attending the transaction. It is impossible to formulate a general principle or criterion for its determination. Accordingly, whether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case." 12 Am. Jur., Contracts, p. 527, sec. 28.

Thus, it has been held that a letter written in reply to an inquiry for lowest quotation on canvas, stating the "lowest price, 32½ inches wide, is 4⅝ d. per yard, 36 inches measure. Delivery of 3,000 yards in 5–6 weeks" is a quotation of prices and not an offer to sell. *Boyers & Co. v. D. & R. Duke* (1905), 2 I. R. 617, 3 B. R. C. 220. Also, a telegram sent by a dealer in reply to a telegram asking how much corn he would sell with lowest cash price, stating "3,000 cases, $1.05, open one week," was held not to be an offer. *Lincoln v. Erie Preserving Co.* (1882) 132 Mass. 129. On the other hand, there is sound reason for holding that prices quoted in response to an inquiry stating that the prices were "for immediate acceptance" are offers which may become a binding contract by acceptance. *Fairmount Glass Works v. Crunden-Martin Wooden Ware Co.* (1889) 106 Ky. 659, 51 S. W. 196; *Buckberg v. Washburn-Crosby Co.* (1906) 115 Mo. App. 701, 92 S. W. 733. See annotation L. R. A. (1915 F) 825.

A statement of prices of merchandise does not become an offer to be converted into a contract by an acceptance so long as the one quoting the prices intends to retain the right to sell the articles to any bidder and customer. In order to have

such an agreement there must be a complete understanding that one is purchasing and the other selling; in other words, the minds of the parties must have met on the terms and conditions making up a contract. When the one quoting prices goes further upon the request of the other party and arranges for determining the amount of the goods to be bought and sold, he has made an agreement upon which a binding contract comes into being where he begins to deliver according to the quotations. He has then declared sufficiently, in a manner recognized by law his intention to and has entered into a valid and enforceable contract. He is then dealing with à specified customer with relation to specific articles in such manner as to bring him within provisions of sec. 121.04, Stats.

"A great mass of human transactions depends upon implied contracts; upon contracts which are not written, but which grow out of the acts of the parties. In such cases, the parties are supposed to have made those stipulations, which, as honest, fair, and just men, they ought to have made. When the law assumes that they have made these stipulations, it does not vary their contract, or introduce new terms into it, but declares that certain acts, unexplained by compact, impose certain duties, and that the parties had stipulated for their performance." *Ogden v. Saunders,* 12 Wheat. 213, 341.

There is no question but defendant wanted to enter into a contract with plaintiff and, although the intent of plaintiff at that time may not be so apparent, a careful examination of the words and acts forming the basis of the transaction justify the inference that plaintiff intended to make a definite offer to deliver the lumber necessary for the building at the prices quoted. He says: "We then had plenty of material and wanted orders."

Had plaintiff merely jotted down quotations of lumber prices in answer to an inquiry by Mr. Eckman the act could not be considered an offer. But when considered in con-

junction with testimony that the plaintiff directed the defendant to get an architect to estimate the lumber needed, have it sent to him, and that he would then send the lumber over, it is sufficient to indicate a definite offer to supply the lumber necessary. Furthermore, the statement made by Mr. Nickel when he was apprised of the fact that he had not charged the quoted prices on the quantity of lumber delivered after September 6th, that it should be changed "to what it is supposed to be" is susceptible of the interpretation that he then recognized the agreement of September 6, 1941.

The findings are not as direct as they might have been. The court uses the word "quotations" when perhaps the word "agreement" or "stipulation" might have suited; but in the light of the decision of the court, any possible confusion disappears and, thus supplemented, the findings become sufficient. *Will of Daniels* (1937), 225 Wis. 502, 510, 274 N. W. 435; *United Parcel Service v. Public Service Comm.* (1942) 240 Wis. 603, 607, 4 N. W. (2d) 138.

The trial court drew the inferences from the facts and was convinced by the evidence that plaintiff intended to make the stipulations claimed by defendant, and its judgment must be sustained.

*By the Court.*—Judgment affirmed.