## A. E. STALEY MFG. CO. v. NORTHERN COOPERATIVES, Inc.

### No. 13677.

Circuit Court of Appeals, Eighth Circuit.

July 1, 1948.

Edmund T. Montgomery, of Minneapolis, Minn. (Frank A. Janes and Snyder, Gale, Hoke, Richards & Janes, all of Minneapolis, Minn., on the brief), for appellant.

Harold Jordan of St. Paul, Minn. (Charles W. Kennedy and Bradford & Kennedy, all of Wadena, Minn., and Doherty, Rumble, Butler & Mitchell, of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH and COLLET, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by the appellant against the appellee to recover damages for the breach of two contracts for the purchase and sale of fifteen carloads of soybean oil meal. The action was tried to the court without a jury and resulted in findings and judgment in favor of the appellee on all the issues. We shall refer to the parties as they were designated in the trial court.

Plaintiff, at all times here material, was engaged in processing and selling soybean oil meal, with its principal place of business at Decatur, Illinois, while defendant was engaged in buying and selling animal feed, with its principal place of business at Wadena, Minnesota. While plaintiff's principal place of business was at Decatur, Illinois, Maney Bros. Mill & Elevator Company, of Minneapolis, Minnesota, at all times material to the issues in this case, was a selling agent and representative of plaintiff authorized to solicit and receive orders for the purchase from plaintiff of its products, which orders were subject to confirmation by plaintiff. This agency is known in the record as Maney Bros., and we shall preserve that designation in this opinion. Before setting out in detail the transactions and negotiations forming the basis of this controversy, we shall first refer to the relations of the parties and the scope and limitations of the authority of the agent as disclosed by the record.

Plaintiff is a member of the National Soybean Processors Association and this association has promulgated certain rules of practice followed by its members in the sale of soybean oil meal, and plaintiff's practice in the sale of soybean oil meal was governed by or subject to these rules. One of these rules provided that, "All sales of Soybean Oil Meal by Members of the Association shall be made under a written contract under the Rules of the Association and shall be signed by both Buyer and Seller."

The appointment of Maney Bros. as agent for plaintiff was the subject of a written contract between plaintiff and its agent. This contract provides, among other things, that, "All sales shall be subject to approval of Staley at Decatur, Illinois." It also contains provision that the representative "shall have no authority to enter into contracts or create or assume any obligations for or in the name of Staley." It also contains provision that the representative agrees to follow the general sales policies of Staley.

The court found, and the evidence shows, that on October 23rd and 24th, 1946, defendant placed with a traveling salesman of Maney Bros., orders for the purchase of fifteen carloads of Staley's soybean oil meal. These orders specified dates for shipment on all fifteen cars,—one car in January, three cars in February, three cars in March, two cars in April, two cars in May, one car in June, one car in July, one car in August, and one car in September. On October 24, defendant mailed to Maney Bros. shipping instructions corresponding to the shipping dates as stated in the orders and these instructions were immediately communicated by Maney Bros. to plaintiff. On the following day Maney Bros. sent to defendant written acknowledgement of the receipt of these orders, stating that they were subject to confirmation by plaintiff. In this acknowledgment by Maney Bros., however, the shipping dates were changed by omitting the January car specified on each order, and adding

one car to the February shipment. This change in the dates of shipment of orders was made by Maney Bros. because of information from plaintiff to the effect that all January supplies had been sold. Defendant first received advice of the change in shipping dates when it received the agent's acknowledgment of the orders and it immediately protested both by telephone and by letter. Plaintiff's confirmation of the orders was in the form of two formal printed contracts which contained many conditions of sale not mentioned in the original orders and also contained a schedule of delivery dates which did not correspond with the dates specified in the orders. These contracts were mailed by plaintiff direct to defendant after plaintiff had received defendant's shipping instructions. Immediately upon receipt of these proposed contracts defendant rejected them by letter to plaintiff. The court specifically found and the evidence clearly shows, that the variance in shipping dates specified in defendant's orders and those stated in the acceptance was material and such as to prevent formation of a binding contract. The court found that plaintiff's proposal for the sale of the soybean oil meal as contained in the proposed written contracts was a rejection of defendant's original offer and constituted a counter-offer which defendant never accepted, and that on December 18, 1946, defendant finally withdrew its original orders and that up to that time it had not received from plaintiff "any clear, plain, unconditional acceptance of said orders and had not received from plaintiff confirmation of its shipping instructions in the manner requested."

On this appeal it is contended that the trial court erred in its findings and that it overlooked "two letters from appellant to appellee written in response to appellee's letters pointing out the discrepancy in shipping dates. Appellant agreed that shipments would be made January through September exactly in the manner requested in appellee's shipping instructions." It is argued in effect that the orders as given and the correspondence between the parties with reference thereto in fact constituted the contracts upon which plaintiff was entitled to recover. It should first be noted that in plaintiff's complaint it is alleged that these contracts were entered into in writing on the 23rd and 24th days of October, 1946, and the pleadings indicate that plaintiff relied upon these formal contracts. This is further fortified by the fact that the established practice of the plaintiff required that all sales "shall be made under a written contract under the rules of the Association and shall be signed by both buyer and seller." The formal contracts which plaintiff sent to defendant for execution contain provision, among other things, that the seller would not be responsible for any loss or damage claimed by the buyer because of "strikes, labor troubles, floods, fires, explosions, accidents, shortage of cars, contingencies of transportation, demurrage or storage charges at destination, civil commotion, embargoes, or other causes of like or different character beyond seller's control." The contracts also contained provision that the buyer might not assign the agreement or re-consign any shipment without the written consent of the seller; that the prices were based on freight rates in effect on the date of sale and that any increase in the freight rate would have to be borne by the buyer. They also contained provision that the seller should not be liable for any loss or damage resulting from handling, storage or use of the goods, whether in manufacturing process or otherwise; that no warranties as to the adaptability of the goods should be created unless the warranties be in writing and signed by the seller at its principal office in Decatur, Illinois. The contracts also contained the following: "There are no understandings, representations or warranties of any kind express or implied not expressly set forth herein. Buyer expressly waives all such claims other than those arising by virtue of said written warranties."

The contracts also contain provision that, "No orders or contracts shall be binding upon seller unless accepted by an officer or other authorized person at its principal office in Decatur, Illinois. Neither salesmen nor brokers have the authority to change or modify the conditions of this sale and no modification hereof shall be binding unless made in writing at the seller's principal office in Decatur, Illinois."

These contracts contained numerous other specific provisions, none of which were contained in the orders nor any of the correspondence. It seems clear therefore that the parties in their negotiations contemplated that the contractual relations and obligations between them should ultimately be witnessed by a specific written contract to be signed by them. This contract was required not only to be in writing, but was required to contain many specific limitations and restrictions. The orders, the oral negotiations and the correspondence relative to this sale were negotiations which were intended ultimately to result in the contracts upon which plaintiff has brought this action. An invitation to enter into negotiations is not an offer which may be accepted and thereby create a contract. Preliminary negotiations between parties who have in mind the execution of a formal written contract can not themselves be construed as constituting the contract. Nickel v. Theresa Farmers Co-op. Ass'n., 247 Wis. 412, 20 N.W.2d 117; Dobbins v. City Bond & Mortgage Co., 343 Mo. 1001, 124 S.W.2d 1111; Morrow v. De Vitt, Tex. Civ.App., 160 S.W.2d 977; Moulton v. Kershaw, 59 Wis. 316, 18 N.W. 172, 48 Am. Rep. 516. In the law of contracts the intent of the parties must be looked to and a contract is not made so long as both parties anticipate that something remains to be done to establish contractual relations. As said by the author of the article on Contracts, 12 American Jurisprudence, Sec. 23, p. 519, "A contract is not made so long as in the contemplation of both parties thereto something remains to be done to establish contractual relations."

The author of the article on Contracts in 17 C.J.S., § 31, states the rule as follows: "In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract. Both parties must assent to the same things in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement."

In the same article at section 49, page 394, it is said: "Unless all the terms and conditions are agreed on, and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect, as in case of a contract to enter into a contract on terms to be settled at some future time."

But even though all the negotiations between the parties, including the letters passing between them, be considered, we think no final contract has been established. The orders which the defendant gave to Maney Bros.' traveling salesman may at best be considered as an offer to buy. But these, without the consent of defendant, were changed in a material manner before being communicated to the plaintiff and the plaintiff knew of this unauthorized alteration. Notwithstanding that, plaintiff sent to defendant for execution the two proposed contracts reciting the delivery dates as changed by plaintiff's representative. This, not being in compliance with defendant's offer to purchase, was a rejection of that offer and the submission of an offer to sell. This offer submitted by the plaintiff was immediately rejected. Certainly, at this stage of the proceedings no contract had been entered into. Baird v. Pratt et al., 8 Cir., 148 F. 825, 10 L.R.A.,N.S., 1116; Canton Cotton Mills v. Southwest Overall Co., 8 Cir., 8 F.2d 807; Lewis v. Johnson, 123 Minn. 409, 143 N.W. 1127, L.R.A. 1915D, 150; Minneapolis & St. Louis Railway Company v. Columbus Rolling Mill Co., 119 U.S. 149, 7 S.Ct. 168, 169, 30 L.Ed. 376. But the proposed formal contracts sent to defendant by plaintiff, being a rejection of defendant's offer, put an end to the negotiations and plaintiff could not thereafter accept defendant's original offer which had thus been rejected.

In Minneapolis & St. Louis Railway Co. v. Columbus Rolling-Mill Co., supra, defendant, on December 8, had written plaintiff offering to sell plaintiff 2000 to 5000 tons of rails. On December 16, plaintiff wired defendant, "Enter our order for twelve hundred tons rails, * * * per your favor of the eighth." On December 18, defendant wired plaintiff, "We cannot book your order at present at that price."

On December 19, plaintiff wired defendant, "Please enter an order for two thousand tons rails as per your letter of the sixth." To this communication defendant did not reply and it denied the existence of a contract. In considering the issue thus raised the court said: "A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it."

The decision of the Supreme Court of Minnesota in Lewis v. Johnson, supra, is to the same effect. In that case defendant sent a letter to plaintiff dated January 8, offering to sell land on certain terms. On January 26, plaintiff sent a letter to defendant purporting to accept defendant's proposition, on which it was claimed a contract arose. In disposing of this contention the court said: "The trouble arises from the fact that there was intervening correspondence which precludes our regarding these two letters as a completed offer and acceptance."

After referring to the intervening correspondence by which plaintiff first responded to defendant's offer by changing its terms and defendant replied changing the original offer, the court said: "After all this intervening correspondence, varying on both sides from the original offer of January 8th, plaintiff could not catch up this letter of January 8th, and, by writing a letter accepting its terms, make a binding contract, without some renewed assent thereto on the part of the defendant."

So, in Canton Cotton Mills v. Southwest Overall Co., supra, in which a somewhat similar situation was presented, the court said [8 F.2d 809]: "The acceptance of an offer indispensable to close a contract to purchase must be clear, plain and without material conditions or modifications. An acceptance on new or modified terms or conditions is a rejection and the proposal of a new contract, and the contention of plaintiff's counsel here cannot be sustained."

There is no claim that at any time subsequent to the submission of these formal proposed contracts by plaintiff did defendant accept the proposal of plaintiff as contained therein. But it is claimed that after that time plaintiff, by writing certain letters, agreed to the terms as contained in defendant's original offer. This overlooks the fact that as a matter of law the original offer made by the defendant as reflected by the orders given was terminated by rejection and plaintiff was not at liberty thereafter to accept it so as to create a contract. The judgment appealed from is therefore affirmed.