1999 SD 144

The **EQUITABLE LIFE ASSURANCE SOCIETY of the UNITED STATES, a New York Corporation, Plaintiff and Appellant,**

v.

**FIRST NATIONAL BANK, Defendant and Appellant,**

and

**Fred H. Olson, Jr. and Jennifer E. Olson, Defendants and Appellants,**

and

**Roger Barber and James Bloom; Moodie Implement, Pierre, Inc.; Stulken, Peterson, Joel Association; Fred's Farm Supply, Inc.; Hutmacher Drilling Inc.; Grossenburg Implement, Inc.; Fidelity Agency; and Charles Baker, d/b/a Baker Harvesting, Defendants.**

Nos. 20931, 20934, 20937.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1999.

Decided Nov. 17, 1999.

John S. Dorsey of Whiting, Hagg & Hagg, Rapid City, South Dakota, Attorneys for appellant Equitable Life.

Brent A. Wilbur of May, Adam, Gerdes and Thompson, Pierre, South Dakota, Attorneys for appellant First National Bank.

James E. McMahon and Jeffrey C. Clapper of Boyce, Murphy, McDowell and Greenfield, Sioux Falls, South Dakota, Attorneys for appellants Olsons.

GILBERTSON, Justice.

[¶ 1.] Equitable Life Assurance Society of the United States (Equitable), Fred H. Olson and Jennifer E. Olson (Olsons), and First National Bank (FNB) separately appealed an order confirming the sheriff's sale of mortgaged real estate. The sale had been conducted pursuant to a judgment of foreclosure on the property. The matters were consolidated in this appeal. We reverse.

## FACTS AND PROCEDURE

[¶ 2.] The Olsons owned ranch land in Stanley and Jones counties in central South Dakota. In 1995, the Olsons borrowed $1,250,000 from Equitable, securing the promissory note with a mortgage on their property. The mortgage had a one-year redemption period. In 1996, the Olsons granted a second mortgage on the same property in exchange for a $870,000 loan from FNB.

[¶ 3.] Olsons later became in default on both of the notes. In January 1998, Equitable commenced a foreclosure action. The circuit court entered a Judgment of Foreclosure and Sale in August 1998. Equitable's mortgage with a principal balance of $1,212,500 was adjudged to be superior to the liens of all other defendants in this action,[1] with the exception of real estate taxes. The court's order stated the mortgaged property was to be "sold at a public auction at the front door of the Jones County Courthouse, ... by or under the direction of the Sheriff of Jones County,

---

1. There were several defendants involved in this action, however, they did not appeal. These defendants include: Roger Barber and James Bloom; Moodie Implement, Pierre, Inc.; Stulken, Peterson, Joel Association; Fred's Farm Supply, Inc.; Hutmacher Drilling Inc.; Grossenburg Implement, Inc.; Fidelity Agency; and Charles Baker, d/b/a Baker Harvesting.

South Dakota, in the manner as provided by the laws of the State of South Dakota for the foreclosure and sale of real property; ..." Notice of the sheriff's sale was published for four successive weeks. The notice stated the sale would take place at 11:00 a.m. CDT on Thursday, October 15, 1998.

[¶ 4.] On October 14, 1998, the day before the sale, Equitable and FNB entered into an agreement under which FNB would purchase Equitable's interest in the mortgage for approximately $1,300,000. Later that afternoon, FNB wired funds to Equitable in order to pay off the debt. Prior to receiving notice of confirmation of receipt of the funds, Equitable's attorney, Brian Hagg (Hagg), contacted the Jones County Deputy Sheriff and informed him that he was 95% sure the judgment would be paid and the sale would be called off. Hagg also testified at trial he told the deputy that the sheriff should cancel the sale. Hagg further told the deputy, Hagg would either personally appear or call prior to the time set for the sale. Hagg did not receive confirmation of the funds until the morning of October 15. Hagg testified he attempted to call the Jones County Sheriff's Office between 10:00 and 10:30 a.m. that morning, but received a busy signal and could not get through. Just before 11:00 a.m., the sheriff checked with the clerk of courts to see if there was any indication the sale was going to be cancelled. The clerk told the sheriff no such messages had been received. The sheriff's sale commenced at 11:05 a.m. CDT.

[¶ 5.] Hagg again called the sheriff's office and this time did reach the deputy at 11:15 a.m. CDT. The attorney was advised the sale had already commenced. Hagg advised the deputy the sale should be canceled as Equitable had been paid and judgment assigned to FNB. The deputy interrupted the sale with the bidding at $1,800,000 and at about 11:30 a.m. the sheriff spoke directly to Hagg.

[¶ 6.] Hagg explained to the sheriff the sale needed to be canceled as, given the assignment from Equitable to FNB, there was nothing for the sheriff to sell. The sheriff advised the attorney he was not clear on how he would proceed, but he would contact his state's attorney. Hagg again tried to explain to the sheriff the sale should be canceled, because the purpose of the sale was no longer legitimate. The attorney further informed the sheriff not to issue a Certificate of Sale or to accept anything other than cash or certified check.

[¶ 7.] However, after speaking with the Jones County State's Attorney and informing the bidders he was to cancel the sale, the sheriff was asked by the bidders to continue the sale. The sheriff completed the sale by accepting a bid of $1,810,000 by Carl Mathews, the highest bidder. Upon learning of this, Hagg contacted the Jones County Circuit Court requesting an order to set aside the sheriff's sale on an Ex Parte Motion and Affidavit. The court indicated it would not set aside the sale, but would issue an order holding all matters in abeyance pending a hearing.

[¶ 8.] The sheriff prepared a Certificate of Sale and issued it to Mathews on October 15, certifying "the land was sold at public auction and that the purchaser was the highest and best bidder for said premises, and that said sum was the highest and best bid."

[¶ 9.] The same day, the circuit court ordered all matters and proceedings pertaining to the sheriff's sale to be held in abeyance and the sheriff of Jones County "shall cease and desist any further issuance of any certificate of sale or other official documents pertaining to the sale." Both FNB and the Olsons filed exceptions to the sale, seeking it be set aside. On November 8, 1998, the circuit court confirmed the sheriff's sale concluding as a matter of law, the highest bidder's personal check satisfied the "for cash" requirement of SDCL 15–19–13. Equitable, FNB and Olsons appeal, raising the following issue for our consideration:

Whether a sheriff's sale of real property conducted pursuant to a Judgment of Foreclosure can be canceled by the mortgagee after the bidding commences.

## STANDARD OF REVIEW

■ [¶ 10.] This appeal seeks review of the circuit court's interpretation of the legal effect of the evidence presented. Thus, this Court is presented with a mixed question of fact and law, which is fully reviewable. *Fiegen v. North Star, Ltd.,* 467 N.W.2d 748, 750 (S.D.1991) (citing *Permann v. Department of Labor, Unemployment Ins. Div.,* 411 N.W.2d 113, 116 (S.D. 1987)).

## ANALYSIS AND DECISION

[¶ 11.] **Whether a sheriff's sale of real property conducted pursuant to a Judgment of Foreclosure can be canceled by the mortgagee after the bidding commences.**

■ [¶ 12.] The trial court's Judgment of Foreclosure and Sale ordered "that the mortgaged premises ... shall be sold at public auction ... in the manner as provided by the laws of the State of South Dakota for foreclosure and sale of real property...." SDCL 21–47–14 provides, in pertinent part:

All sales of mortgaged premises under an order and decree of foreclosure must be made by a referee, sheriff, or his deputy, of the county where the court in which the judgment is rendered is held, or other person appointed by the court for that purpose, and must be made in the county where the premises, or some part of them, are situated, and shall be made upon like notice and in the same manner as provided by law for the sale of real property upon execution.

The law for the sale of real property upon execution is contained in SDCL ch. 15–19. This was an execution sale for real property pursuant to SDCL 15–19–8 and was to be made at "public auction, to the highest bidder, for cash." SDCL 15–19–13. Equi-

table argues as the mortgagee in this case, it alone, and not the sheriff, had the power and authority to decide whether or not to cancel the sale. We agree. This Court stated in *State v. Ruden,* 60 S.D. 521, 244 N.W. 886, 887 (1932), the power of sale in its broader sense is in the person to whom the mortgagor gives it; that is, the mortgagee. "It is for the mortgagee to determine when the power of sale will be exercised, and to give notice of the sale. It is the duty of the mortgagee to know what goes on at the sale, and to direct and supervise the same ..." *Id.* (internal citation omitted). While the actual sale is conducted by the sheriff, the exercise of power is in the mortgagee. *Fransen v. State,* 59 S.D. 432, 240 N.W. 503, 505 (S.D. 1932).

■ [¶ 13.] Equitable claims the circuit court erred in holding as a matter of law a sheriff's execution sale is a sale "without reserve." Whether the owner of property to be sold at auction may withdraw such property prior to the acceptance of a bid depends largely upon whether the auction is "with reserve" or "without reserve."

In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time.

SDCL 57A–2–328(3); *see also* 7 AmJur2d *Auctions and Auctioneers* § 17 (1980).

■ [¶ 14.] Because no fact suggests the sale was advertised as one "without reserve," the sheriff's sale should be presumed to be a sale with reserve. The Olsons, as mortgagors, retained the right of redemption pursuant to SDCL 21–52–1 and 21–52–2. Second, in the absence of a sale declared to be "without reserve," the general rule is that:

a seller of property at auction or the auctioneer may withdraw the property

from sale at any time before the acceptance of a bid, on the theory that a bid constitutes a mere offer for a contract and until it is accepted there is no contract between the parties.

7 AmJur2d *Auctions and Auctioneers* § 17 (1980). The offer to sell the property was rightfully withdrawn by Equitable, and the sheriff advised the bidders he was to cancel the sale. Bidder Mathews was put on notice before the "fall of the hammer" the offer to sell was to be withdrawn. Thus, there was no offer to accept.

[¶ 15.] Since the Judgment for Foreclosure and Sale ordered the mortgaged premises to be sold at public auction, the sheriff's role was that of an auctioneer. Generally, an auctioneer is the agent of the person whose property the auctioneer sells. *Re Premier Container Corp.*, 95 Misc.2d 859, 408 N.Y.S.2d 725, 729 (N.Y.Sup.Ct.1978); 7 AmJur2d *Auctions and Auctioneers* § 55 (1996). The auctioneer must act in good faith and in the interest of the principal, and make the sale in accordance with the instructions of the principal. *Id.* This concept is supported by SDCL 59–8–1 which states: "[a]n auctioneer in the absence of special authorization or usage to the contrary, *has authority from the seller* ..." (emphasis added). Also, a sale at auction, like every other sale, must have the assent, express or implied, of both seller and buyer. 7 AmJur2d *Auctions and Auctioneers* § 16 (1980). Since a sheriff conducting the public auction obtains his authority from the mortgagee, it logically follows the mortgagee can strip the sheriff's authority for conducting the sale. "[T]he right, under appropriate circumstances, to order a delay in making an execution sale, has been recognized on the ground that an execution is the process of the judgment creditor and is under his control." 30 AmJur2d *Executions* § 475 (1994).

[¶ 16.] It is undisputed the sheriff was notified he was to cancel the sale *prior* to the hammer falling. Equitable, as mortgagee, not the sheriff, had the power of sale. We find it was Equitable, who, through its attorney, had the legal authority and right to direct the sheriff to cancel the sale.

[¶ 17.] In *Stacy v. Smith*, 9 S.D. 137, 68 N.W. 198 (S.D.1896), the foreclosing plaintiff requested a foreclosure sale to be canceled because of a mistake. In *Stacy*, the mistake concerned the foreclosing party's misplaced belief as to the identity of the county sheriff. When it was determined a clear mistake had been made by the foreclosing party, this Court held the sale should be set aside and canceled. *Id.* at 199; *see also Lockhart v. Ruden*, 62 S.D. 1, 250 N.W. 349, 351 (1933); *Hedlin v. Lee*, 21 N.D. 495, 131 N.W. 390, 393 (1911). "No court of equity would permit the sale to stand [based upon this mistake]." *Stacy*, 68 N.W. at 199. We believe this principle applies to the case at bar as well, where the evidence so clearly shows Equitable, the mortgagee, attempted to cancel the sheriff's sale, while the sheriff nevertheless went ahead and proceeded with the sale against the mortgagee's wishes.

[¶ 18.] The trial court erred when it ruled as a matter of law the sheriff's sale was "without reserve" as there was no factual basis because the Notice of the Sheriff's sale indicated the sale was to be "with reserve."

[¶ 19.] We reverse the circuit court's order confirming the sale and order the parties be returned to their positions as if the sale had been canceled on October 15, 1998.[2]

[¶ 20.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

---

2. Equitable argues the remedy of the Olsons is to pursue amercement against the sheriff per SDCL ch. 15–21. We need not and do not address this issue.