ALCORN, Respondent, v. EDMUNDS COUNTY, Appellant.

(241 N. W. 323.)

(File No. 7023. Opinion filed March 7, 1932.)

*H. L. Woodworth,* of Ipswich, for Appellant.
*J. M. Berry,* of Ipswich, for Respondent.

ROBERTS, J. Plaintiff instituted this action to recover from Edmunds county damages which she claims to have sustained by reason of the construction of an overhead crossing on federal highday No. 12 one-half mile east of Roscoe over the railroad tracks of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company. Plaintiff owns a tract of land on the south side of this highway, and on which she erected in the fall of 1922 a nine-room house, barn, and other buildings. The house is 52 feet from the edge of the highway. When the house was constructed, there was an ordinary highway grade along the front of plaintiff's buildings.

The railroad right of way is approximately 250 feet north of plaintiff's house, and runs in a southeasterly direction, and intersects the highway one mile east. There is a railroad wye to the east of plaintiff's premises, and within the distance of a mile the original federal highway No. 12 crossed the tracks of the wye and also the main railroad right of way. In 1924 the state highway commission changed the course of this highway, and eliminated the railroad crossings by the construction of an overhead crossing slightly to the northeast of plaintiff's house. The west approach is a dirt embankment, approximately 250 feet in length, and is 9 feet above the level of the ground at the nearest point north of plaintiff's house, a distance of 75 feet to the center of the approach, and increases to the height of 23 feet above the ground at the structural part of the overhead crossing. The embankment obstructs the view to the north from the house and building site, and the traffic over this approach raises an excessive amount of dust which settles in the house and about the premises. There is also the claim that the approach causes water to accumulate and snow to drift in front of the house. The jury returned a verdict for the plaintiff, and, from the judgment rendered thereon and order denying motion for new trial defendant appeals.

It is the contention of the defendant, asserted by proper assignments of error, that the judgment is erroneous, for the reason that no cause of action against the county is stated in the complaint; that there is no allegation in the complaint to connect or show that the county constructed, or was required to construct or maintain, the highway in question, or that it had any duty to perform in connection with this highway.

■ There was no taking or physical invasion of plaintiff's

property. The damages are consequential, and the question presented is whether plaintiff can recover damages which are not immediate and direct, caused by the construction of the overhead crossing and the elevating of the grade in front of her property. Plaintiff asserts her claim under section 13, art. 6, of the State Constitution: "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken. No benefit which may accrue to the owner as the result of an improvement made by any private corporation shall be considered in fixing the compensation for property taken or damaged. The fee of land taken for railroad tracks or other highways shall remain in such owners, subject to the use for which it is taken."

The right to recover damages when private property is taken or damaged for a public purpose does not arise from this provision of the Constitution; it prevents the Legislature from invading the right and vests in an owner of property the right to prevent the taking or damaging of property until compensation is paid. Hyde v. M. D. & P. Ry. Co. et al, 29 S. D. 220, 136 N. W. 92, 40 L. R. A. (N. S.) 48.

Section 62, ch. 333, of the Session Laws of 1919, defines the duties of the state highway commission and the board of county commissioners of the several counties with reference to the construction of overhead and subway railroad crossings. The statute recognizes the existence of two situations, and in the language of the statute they are as follows:

First. "The building of a subway or overhead crossing on a state or county highway when no right of way is needed:

"(a) The Board of Railroad Commissioners and Highway Commission must determine when it is necessary to eliminate such crossings.

"(b) The Highway Commission, in case it is a state highway, must proceed to eliminate such dangerous crossings, if a county highway, the Board of County Commissioners must proceed to eliminate such dangerous crossing upon notification from the Highway Commission.

"(c) The steam or electric railroad company must pay for all of such improvement within the right of way of such steam

or electric railroad company and provide for the necessary drainage."

Second. "The building of a subway or overhead crossing on a state or county highway when new right of way is necessary:

"(a) The Board of Railroad Commissioners and Highway Commission must determine when it is necessary to eliminate such dangerous crossing.

"(b) The Highway Commission, in case it is a state highway, must proceed to eliminate such dangerous crossing, if a county highway, the Board of County Commissioners must proceed to eliminate such crossing upon notification from the Highway Commission.

"(c) The necessary right of way must be obtained by the Board of County Commissioners either by consent of the owners of such property as is sought or by condemnation, after the same has been properly surveyed and plats prepared by the Highway Commission or County Highway Superintendent.

"(d) The steam or electric railroad company must pay for all of such improvement within the lines of right of way of such steam or electric railroad company and provide proper drainage. The state or county shall pay for the right of way and necessary grading approaching and leading from such overhead crossing or subway under-crossing."

The duty is imposed upon a county to secure right of way when it is required either upon a state trunk highway or county highway system for the construction of an overhead or subway crossing. The term "right of way" used in this act refers to the physical property over which the highway or proposed highway extends. When no right of way is required for an overhead crossing on a trunk highway, no duty under the provisions of the above-quoted statute is imposed upon the county. No mention is made of the payment of damages by the county in such instance for property injured, and no duty is imposed on the county to compensate an abutting owner for consequential damages where no part of his property is actually taken, though a right of way may be acquired by purchase or condemnation from other property owners. The overhead crossing in question is on a state trunk highway, and was constructed under the direction of the state highway commission. The county had no voice in authorizing the erection of

516

the overhead crossing, and had no duty to perform with respect to its construction.

Attention has also been directed to the provisions of section 56, ch. 333, Laws 1919, as amended by chapter 286, Laws of 1923, which was effective when this controversy arose. This section has been subsequently amended by chapter 139, Laws of 1927. The amendment of 1923 required counties to acquire and pay for lands or right of way in any part of the trunk highway system to be improved. Granting that this section had application to acquisition of right of way for an overhead crossing, it contained no provision which required a county to pay damages where injury had been caused to the property of an abutting owner and where no part of his property had been actually taken for right of way.

The plaintiff had a remedy through the injunctive process of the courts. She could have enjoined the contemplated construction until compensation was paid. The Legislature could have imposed the obligation on the county to recompense an abutting owner for consequential damages when no part of his property is taken, but the defendant county, having invaded no property right of the plaintiff, cannot be compelled to respond in damages, in the absence of a statute imposing liability.

The judgment and order appeal from are reversed, with directions to dismiss the complaint.

CAMPBELL, P. J., and POLLEY, WARREN, and RUDOLPH, JJ., concur.