HURLEY et ux., Plaintiffs v. STATE, Defendant

(143 N.W.2d 722)

(File No. 10110. Opinion filed June 21, 1966)

**Bangs, McCullen, Butler & Foye,** and **Sieler, Sieler & Varilek,** Rapid City, for plaintiffs.

**Frank L. Farrar,** Atty. Gen., and **John B. Wehde,** Sp. Asst. Atty. Gen., Pierre, for defendant.

HANSON, Judge.

This is the final chapter, we trust, in protracted proceedings involving damages claimed by an abutting property owner for loss of access to West Boulevard in Rapid City. The action orig-

inated against the city. On appeal, Hurley v. City of Rapid City, 80 S.D. 180, 121 N.W.2d 21, it was determined the city was not legally responsible for the damages claimed. Plaintiffs then filed a claim in the amount of $75,000 against the State of South Dakota. The claim was denied and this action commenced under SDC 1960 Supp. 33.0604. The Hon. F. Thomas Parker, one of the judges of the Seventh Judicial Circuit, was appointed Referee. During the reference certain pretrial questions were certified to and determined by this court in Hurley v. State, 81 S.D. 318, 134 N.W.2d 782. The issues were thereafter heard by the Referee, without a jury, and he reports there has been a substantial impairment of plaintiffs' right of access by the construction of a barrier by the State constituting a taking and damaging of plaintiffs' property in the amount of $20,000, together with interest at 6 percent per annum since April 19, 1959. The State excepts to the Referee's Report upon the following grounds: (1) There has been no compensable taking or damaging of plaintiffs' property, and (2) there was not a unity of use between the two lots sufficient to support a consequential damage award as one parcel.

The facts found by the Referee and as disclosed by the evidence show plaintiffs have owned Lots 1 and 2 of Tract A in Lot 25, Block 25 of Riverside Addition in Rapid City since 1954. Lot 1 is situated on the corner of Omaha Street and West Boulevard. Lot 2 adjoins on the west. Before the taking West Boulevard and Omaha were conventional public streets. Plaintiffs had open, free, and unobstructed access to West Boulevard on the east of their lots for a distance of 162 feet and to Omaha street on the south for a distance of 80 feet. West Boulevard was converted from a conventional street into part of Interstate 90. As part of the construction the State Highway Commission on April 19, 1959 erected a steel barrier along the west side of West Boulevard. This steel barrier runs along the entire east side of plaintiffs' lots and extends around the corner on Omaha street for a distance of 10 feet. The barrier precludes all direct access from plaintiffs' property to West Boulevard.

The Referee found before the construction of the barrier and conversion of West Boulevard into part of Interstate 90 the

highest, best, and most profitable use of the two lots was for a service station with a fair market value of $30,000. After the construction of the barrier the property was no longer usable as a service station and had a fair market value of $10,000. Therefore, plaintiffs' property was substantially impaired and damaged by the loss of access in the amount of $20,000. The Referee also found the highest, best, and most profitable use of Lots 1 and 2 were as a unit. The lots were vacant and unoccupied.

■ ■ It is universally recognized that an owner of land abutting on a conventional street or highway has certain private rights in the street or highway distinct from that of the general public. 29A C.J.S. Eminent Domain § 105(1), p. 424 et seq. Right of access is one of these private property rights which cannot be taken for public use or materially impaired without compensation. 29A C.J.S. Eminent Domain § 105(2), p. 429. This has long been the settled law of this state. In the early case of Edmison v. Lowry, 1892, 3 S.D. 77, 52 N.W. 583, 17 L.R.A. 275, the court said: "This right of the abutting owner is a peculiar, distinct, and separate right from that of the general public to use such street as a public highway. It includes, not only the rights of the general public, but the further right to the street for light and air, access, ingress, and egress, at all times, subject only to the easement of the public and the rights of the municipality. This right to an unobstructed street in front of his premises for light and air, access, ingress, and egress, belonging to an abutting owner, constitutes the most valuable part of the property, especially in crowded thoroughfares and on business streets, and without these rights the property, in many instances, would be greatly diminished in value. These rights, therefore, constitute property that cannot be taken for public use, except upon payment of just compensation. See also Hyde v. Minnesota, D. & P. Ry. Co., 29 S.D. 220, 136 N.W. 92, 40 L.R.A.,N.S., 48.

Until the latter part of the last century most states refused to compensate an owner of land which had been damaged by the construction of a public improvement where there was no physical taking of any part of the property on the theory that

consequential damages were not recoverable under the "taking" clauses of their eminent domain constitutional clauses. This was recognized as unjust and "in 1870 a constitutional amendment was adopted in Illinois providing that private property should be neither taken NOR DAMAGED for public use without compensation. This action by Illinois was followed by many of the other states * * It is now contained in the constitutions of Alabama, Arizona, Arkansas, California, Colorado, Georgia, Illinois, Kentucky, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, Pennsylvania, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming * * It is under the later provision of the constitution protecting an owner against 'damage' that a landowner may claim compensation for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in connection with and as incidental to the ownership of the land itself". 2 Nichols on Eminent Domain § 6.44, pp. 486, 487.

■ This basic rule has long been recognized in South Dakota i. e., even though no part of private property is physically taken the landowner is entitled to compensation under the taking and damaging clause of our constitution (§ 13, Art. VI) when the construction of a public improvement causes damage to property "if the consequential injury is peculiar to the owner's land and not of a kind suffered by the public as a whole." State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W.2d 572; Searle v. City of Lead, 10 S.D. 312, 73 N.W. 101, 39 L.R.A. 345; Whittaker v. City of Deadwood, 12 S.D 608, 82 N.W. 202; In Re Yankton-Clay County Drainage Ditch, 38 S.D. 168, 160 N.W. 732.

Specific statutory authority is granted to the state highway department to acquire "private or public property rights for controlled-access facilities and service roads, including rights of access, air, view, and light * * *." SDC 1960 Supp. 28.09A05.

■ It is equally well settled, however, that an abutting landowner's right of access is not absolute, but is subject to

reasonable regulation and restriction by the state under its police power in the public interest. As expressed in Darnall v. State, 79 S.D. 59, 108 N.W.2d 201 "The construction of a highway past a place of business gives owners no vested right to insist that it remain there as a changeless road in a changing world * * * The right of ingress and egress has been held to be subject to reasonable regulations in the public interest and for the promotion of public convenience and necessity * * * it has been declared to be a reasonable or convenient access and not access at all points along the highway." Under the circumstances, it was concluded by the majority of the court there could be no recovery as there was no physical taking and the owner's access to the highway was not unreasonably diminished or interfered with. Therefore, Darnall's loss due to diversion of traffic was the end result of a lawful exercise of the police power. The State contends the same principle applies and the same conclusion is dictated here. We do not agree.

The three broad inherent powers of governmental sovereignty by which the state carries out its fundamental purpose of protecting the health, safety, morals, and general welfare of the public are the powers of taxation, police, and eminent domain. These are co-existing and may be and often are exercised simultaneously to perform a single governmental function. In such case, it is difficult to determine with exactitude when regulation under the police power ends and a compensable taking of private property begins. The question was answered by the Nebraska Court in Balog v. State, 177 Neb. 826, 131 N.W.2d 402 as follows: "The fact that appellant [State of Nebraska] had under the police power the right to improve its streets and thereby control the traffic thereon does not mean that it had immunity from liability to respond in damages which resulted to private property abutting the improvement where a part of the property of appellee was taken by condemnation. The exercise of police power may or may not involve the taking of private property and it may or may not involve mere noncompensable inconvenience to the owner thereof. The distinction is not whether it is a valid exercise of police power but whether or not the property itself is taken or damaged." Likewise, the Minnesota Court said "While

courts have assumed that designating a regulation an exercise of police power prevents compensation by eminent domain proceedings, for practical purposes this is simply a convenient way of describing which activities confer a right to damages and which do not. The prohibiting or limiting of access to a highway may well be an exercise of police power in the sense that it is designed to promote traffic safety, but at the same time it may cause compensable injury to an abutting owner. The damage to him must be different in kind and not merely in degree from that experienced by the general public." Hendrickson v. State, 267 Minn. 436, 127 N.W.2d 165.

■ ■ In each case, therefore, the relative rights of the public and private interests must be considered and the reasonableness of the regulation and the degree of its interference with private property determined. If, after the construction of a public improvement an abutting landowner continues to have reasonable access to his property, he has no compensable complaint. But if the right of access is destroyed or materially impaired, the damages are compensable if the injury sustained is peculiar to the owner's land and not of a kind suffered by the public generally. In other words "police regulations must be reasonable, and the legislature cannot, under the guise of the police power, impose unreasonable or arbitrary regulations which go beyond that power, and in effect deprive a person of his property within the purview of the law of eminent domain, as by depriving the owner of all profitable use of the property not per se injurious or pernicious, restricting the lawful uses to which the property can be put and destroying its value, permanently so restricting the use of the property that it cannot be used for any reasonable purpose, or completely destroying the beneficial interest of the owner." 29A C.J.S. Eminent Domain § 6, p. 182.

In the present case, plaintiffs' property is situated on the corner of two streets in a commercial zone of the City of Rapid City. Before the construction of Interstate 90 free, open, and unobstructed access was available from the property to both Omaha Street on the south and West Boulevard on the east. Its highest, best and most profitable use was for an automobile service station

and one of the major considerations contributing to its value for such purpose was the right of access to two streets. Negotiations with major oil companies were in progress when the state erected the steel barrier closing all access to the property from West Boulevard and for a limited distance on Omaha Street. The barrier left access only to the west bound traffic on Omaha Street. Likewise, all pedestrian traffic was closed off from the east and from the south. Consequently, the Referee correctly concluded plaintiffs' right of access was substantially impaired and they suffered a compensable loss. Their damages were different in kind and not merely in degree from that experienced by the general public and their private property right of access was taken in the constitutional sense requiring compensation to be paid therefor.

■ The measure of damages for the obstruction or substantial impairment of an abutting landowner's right of access to a street or highway is the difference between the market value of the property considered at its highest, best, and most profitable use immediately before and immediately after the destruction or impairment. Boxberger v. State Highway Commission, 126 Colo. 526, 251 P.2d 920. Because plaintiffs acquired Lots 1 and 2 at different times and the property is vacant the State contends the Referee erred in considering his property as a single parcel for the assessment of damages.

■ ■ When part of one, or one, of several lots or tracts of land is taken by eminent domain the owner is not ordinarily entitled to compensation on the residue unless the lots or tracts were used as a unit for a single purpose. "There is no single rule or principle established for determining the unity of lands for the purpose of awarding damages in eminent domain cases. While, generally, there must be unity of title, contiguity of use, and unity of use, under certain circumstances, the presence of all these unities is not essential." 29A C.J.S. Eminent Domain § 140, p. 591. For example, in State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675 and in State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W.2d 572, this court recognized that physically separated tracts of land commonly owned

and used could be considered one parcel. "In many cases the court can, as a matter of law, determine that lots are distinct or otherwise, but ordinarily it is a practical question to be decided by the jury or other similar tribunal which passes upon matters of fact, which should consider evidence on the use and appearance of the land, its legal divisions and the intent of its owner and conclude whether on the whole the lots are separate or not. In such cases the land itself rather than the map should be looked at, and one part of a parcel is not to be considered separate and independent merely because it was bought at a different time from the rest and is separated from it by an imaginary line." 4 Nichols on Eminent Domain, § 14.31, p. 715.

▄▄▄ Plaintiffs have continuously owned Lots 1 and 2 since 1954. There is no physical barrier, line fence, street, alley, or intervening land between them. They are separate only on plats. Lot 1 is 40 feet wide and 162 feet long. Lot 2 is 40 feet wide at its junction with Lot 1 on Omaha Street, but it extends only 125 feet north and fans out to a width of 63.9 feet across its northern boundary. Because of its location, irregular shape, and size the two lots in conjunction were particularly adaptable and valuable as an automobile service station. The owners held the property for this singular purpose and were negotiating with major oil companies for a favorable sale or lease of the premises. Access to West Boulevard was a major consideration contributing to their value. Without such access the value of the lots was necessarily and permanently reduced. Their use for any purpose was materially diminished. Under the circumstances, the Referee properly considered Lots 1 and 2 as a single parcel or unit for the assessment of damages.

▄▄▄ As the damages constitute compensation for the taking of private property by the state for highway right-of-way, there exists an appropriation for payment. Darnall v. State, 79 S.D. 59, 108 N.W.2d 201. We, therefore, confirm and adopt the Report of the Referee and order entry of judgment in favor of plaintiffs against the State of South Dakota for the sum of $20,000 together with interest thereon at the rate of 6 percent per annum from the 19th day of April, 1959.

Although the issues directly involved have been disposed of we feel compelled, in the public interest, to consider the adequacy of the remedy now afforded a landowner whose property has been taken or damaged without just compensation. An allied question is whether or not § 13, Art. VI of the South Dakota Constitution is self-executing. Before its amendment by the people in 1962, § 13, Art. VI provided "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken * * *." As amended, it now provides "Private property shall not be taken for public use, or damaged, without just compensation, which will be determined according to legal procedure established by the Legislature and according to Section 6 of this Article. * * *" Ch. 297, Laws of 1961. Trial by jury in condemnation cases is still guaranteed in the amendment by reference to § 6 of Art. VI which assures "the right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy * * *."

The legislature has adequately provided remedies and procedures in condemnation actions which are available to a condemnor. See SDC 1960 Supp. 28.13A, 37.40, and Ch. 195, Laws of 1963. However, no specific remedy is afforded a person whose land has been taken or damaged by the condemning authority without compensation. In other words, he has a basic constitutional right, but no remedy for its enforcement.

This question was considered in Darnall v. State, 79 S.D. 59, 108 N.W.2d 201, which involved an inverse condemnation action by private landowners against the state. The action originated in circuit court, however this court assumed jurisdiction under the provisions of SDC 1960 Supp. 33.0604. The majority of the court concluded the legislature had provided an adequate remedy by 33.0604 consequently the question of whether or not § 13, Art. VI of South Dakota Constitution was self-executing and the question of whether or not plaintiffs had a common law action in circuit court for the redress of their alleged damages was not decided.

SDC 1960 Supp. 33.0604 provides:

"It shall be competent for any person deeming himself aggrieved by the refusal of the State Auditor to allow any just claim against the state, to commence an action against the state by filing with the Clerk of the Supreme Court in accordance with the foregoing sections a complaint setting forth fully and particularly the nature of the claim. He shall at the same time file an undertaking in the penal sum of five hundred dollars, with two or more sureties, to be approved by the State Treasurer, to the effect that he will indemnify the state against all costs that may accrue in such action, and pay to the Clerk of said Court all costs in case he shall fail to prosecute his action, or to obtain a judgment against the state; and thereupon the action shall be placed upon the calendar of said Court.

"The plaintiff, within ten days after having filed such complaint and undertaking, shall serve a copy of the complaint upon the Attorney General and the State Auditor, together with a notice to plead or answer thereto within thirty days after the service of such complaint and notice, exclusive of the day of service; and the Attorney General shall thereupon be required to answer or plead within the time specified in such notice.

"The trial of such action shall be conducted in accordance with the foregoing sections and any special rule or order made for trial of the particular case by the Supreme Court.

"No execution shall issue against the state on any judgment, but whenever final judgment against the state shall have been obtained in any such action the Clerk of the Supreme Court shall make and furnish to the State Auditor a duly certified transcript of such judgment, and the Auditor shall thereupon audit the amount of damages and costs therein awarded, and the same shall be paid out of the State Treasury."

Since Darnall several inverse condemnation actions against the state have been brought in this court under the permissive provisions of the above statute. This experience clearly demonstrates such procedure does not afford an adequate remedy for persons whose private lands have been taken or damaged by the state without compensation for the following reasons:

1. A $500 bond is required to assert a constitutional right;

2. A jury trial is a matter of grace rather than a right guaranted by § 13, Art. VI and § 6, Art VI of our constitution;

3. Necessary or indispensable parties defendant cannot be joined;

4. As a condition precedent there must be a specific appropriation to pay the claim presented;

5. All questions of fact must be referred to a referee;

6. The procedure is complex, limited, delaying in nature and contrary to the spirit of § 20, Art. VI of our Constitution which assures all persons that "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay";

7. Because it is restrictive and qualified it does not afford a proper, satisfactory, or complete remedy;

8. The Supreme Court is not a proper forum for the determination of fact issues.

In the absence of an adequate remedy which can be invoked by condemnees whose private property has been taken or damaged by the state without compensation § 13, Art. VI of our Constitution is deemed to be self-executing. In such cases

the aggrieved landowner has a common law action in circuit court where his constitutional right to trial by jury may be asserted. This conclusion was forecast in Searle v. City of Lead, 10 S.D. 312, 73 N.W. 101, 39 L.R.A. 345, wherein this court observed that "The provisions of the constitution are not limited to a change of grade once established, but are general, and include all damages to private property for public use. The legislature is not authorized to restrict the language or take from the citizen the protection the constitution has thrown around him and his property. This provision of the constitution is self-executing, and, if there was no law to carry it into effect, a court of equity would, in the exercise of its inherent power, provide some method for ascertaining the damages, if any, caused by the injury threatened." This is in accord with the great weight of authority according to the following summary appearing in 16 C.J.S. Const.Law § 49, p. 149: "While there is some authority that such a provision is not self-executing, it is generally held that a constitutional prohibition against taking or damaging private property for public use without just compensation therefor is self-executing, even though the method of ascertaining such compensation is left for legislative determination. It requires no legislation for its enforcement and confers the right to obtain compensation regardless of statutory provision therefor. Neither consent to sue the state nor the creation of a remedy by legislative enactment is necessary to obtain relief for a violation of the constitutional provision. A constitutional provision that suits may be brought against the state in such manner and in such courts as shall be directed by law does not require the enactment of a statute before suit may be brought to enforce the constitutional provision against the taking or damaging of property for public use without compensation. When the constitution forbids taking of, or damage to, private property, and points out no remedy and no statute affords one for the invasion of the right of property thus secured, the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance."

Therefore, by this caveat we overrule contrary conclusions concerning the adequacy of the remedy afforded by SDC 1960

Supp. 33.0604 for landowners whose property is alleged to have been taken or damaged by the state without just compensation. Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360. In the absence of an adequate remedy provided by the legislature which condemnees may invoke in such cases, Section 13, Article VI of our Constitution is deemed to be self-executing granting them a right of trial by jury in the circuit courts of our state.

RENTTO, P. J., and HOMEYER, J., concur.

BIEGELMEIER, J., concurs in part and dissents in part.

ROBERTS, J., dissents.

BIEGELMEIER, Judge (concurring in part, dissenting in part).

I concur in the opinion in as far as it determines the issues directly involved and in the affirmance of the judgment; but cannot agree with the direction that similar actions be commenced and tried originally in the circuit court. While this may be desirable and a better method than presently exists, or more accurately heretofore existing, that choice is dictated by the constitution to be made by the legislative department of the government and not the judicial department. Art. III, § 27 of our Constitution still reads: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." The legislature has made such direction by enacting SDC 1960 Supp. 33.0604 and that to me forecloses the court from making a different direction.

This is an action against the State, with attributes of sovereignty, 81 C.J.S. States § 2, one of which does not permit a state to be sued by an individual in any court. 81 C.J.S. States §§ 214, 215; Darnall v. State, 79 S.D. 59, 108 N.W.2d 201. This immunity is absolute except only an action by the United States or another state which must be brought in the United States Supreme Court. Article 3, § 2, of the U. S. Constitution and Article 11 of the Amendments thereof.

The reasons for this direction are numbered in the majority opinion and here discussed by the same numbers:

1. A requirement of a reasonable bond before bringing a suit against the state is not an unconstitutional requirement. City of Mitchell v. Western Public Service Co., 124 Neb. 248, 246 N.W. 484.

2. & 5. In Division III of Darnall we said under SDC 1960 Supp. 33.0604, formerly § 2111 of the 1919 Code, plaintiff had a constitutional right of trial by jury which the majority opinion continues to recognize.

3. There is no need of additional parties if the state is liable.

4. Article XI, § 9 of our Constitution has always provided: "No indebtedness shall be incurred or money expended  *  *  * and no warrant shall be drawn upon the state treasurer except in pursuance of an appropriation for the specific purpose first made." The opinion holds an appropriation has been made to pay plaintiffs' claims in which I concur. However, I am reluctant to believe the court is, by listing it as a reason for the change, intending to exclude an appropriation requirement from these claims. If so, the court is determining a question not argued and far reaching in effect.

6. & 7. That the procedure is not complex or difficult is indicated by the number of such actions filed in this court and determined with more dispatch than circuit court actions and resulting appeals.

8. Jury trials are not allowed in the Supreme Court "but in proper cases questions of fact may be sent  *  *  * to a circuit court for trial before a jury." Art. V, § 3, S. D. Constitution. Our Constitution thus makes provision for such trials and the fact United States Supreme Court has many times appointed masters and other triers of issues of fact and law in that court does not indicate a pressing need for the present direction. That determination is for the legislature.

An anomalous result is reached as the majority opinion confirms its referee's finding of damages and the entry of a judgment of this court while at the same time it declares the circuit courts have jurisdiction and this court does not have jurisdiction of these actions.

ROBERTS, Judge (dissenting).

This is an action against the State of South Dakota to recover damages for alleged taking of rights of access to a street. There was no taking or physical invasion of the property of the plaintiffs. Before conversion of the street into a limited-access highway, plaintiffs whose property abuts the street had direct access.

The majority opinion holds that in the absence of a remedy provided by the legislature the state may nevertheless be subjected to suits at the instance of landowners to recover damages for the taking or damaging of private property under the power of eminent domain and thus in effect the defense of sovereign immunity from suit is abrogated. Without being confronted with the precise issue, the court announces its intention to recognize in the future the right to commencement and trial in the circuit courts of suits against the state for the taking or damaging of private property for public use.

I respectfully dissent. The opinion reverses a uniform and consistent course of decisions in this state, without adequate reason, and by a broad new construction of the constitution sanctions actions in the circuit court against the state for the recovery of damages on the basis of the constitutional prohibition of the taking or damaging of property without compensation.

Sovereign immunity from suit presents a jurisdictional question. The established doctrine that the sovereignty cannot be sued in its own courts without its consent is given recognition in our Constitution, Section 27, Article III, providing that "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." The conclusion resulting inevitably from a consideration of previous decisions

in this court is that judicial power granted by the constitution does not embrace authority to entertain a suit against the state unless by legislative action it has consented to be sued. Mullen & Rouke v. Dwight, 42 S.D. 171, 173 N.W. 645; Mackey v. Reeves, 44 S.D. 153, 182 N.W. 700; Sigwald v. State, 50 S.D. 37, 208 N.W. 162; Wisconsin Granite Co. v. State, 54 S.D. 482, 223 N.W. 600; Fransen v. State, 59 S.D. 432, 240 N.W. 503; Griffis v. State, 68 S.D. 360, 2 N.W.2d 666.

In Mullen & Rouke v. Dwight, supra, this court considered an action commenced in the circuit court against the State Board of Regents to recover for the construction of a power house and repairs of buildings at a state normal school. The conclusion was reached that a suit against a state board upon a claim which is in reality a claim against the state is to be deemed a suit against the state. The state had not consented to the bringing of such action in the circuit court and suit therein was not maintainable. This does not mean that an action at law or a suit in equity against defendants, who while claiming to act as officers of the state violate and invade the rights of plaintiff, may not be maintained. White Eagle Oil & Ref. Co. v. Gunderson, 48 S.D. 608, 205 N.W. 614, 43 A.L.R. 397. It may also be noted that injunctive relief will be granted to prevent the taking or damaging of private property in violation of the prohibitions in the eminent domain section. Fauske v. Dean, 78 S.D. 310, 101 N.W.2d 769.

As a basis of discussion of the constitutional questions involved, we should keep in mind that the power of eminent domain is not dependent upon specific grant in the constitution. It is inherent in the sovereignty. The original section (Art. VI, § 13) prohibited the taking or damaging of private property for public purpose "without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken." This prohibition was relaxed by amendment (Ch. 297, Laws 1961) which became effective after approval at the general election in 1962. Requirement that compensation be paid in advance of possession was eliminated. The amendment provides that private property for a public pur-

pose shall not be taken, or damaged, "without just compensation, which will be determined **according to legal procedure established by the Legislature**" and as determined by a jury. The legislature responded to this mandate in part. Chapter 195, Laws 1963, provides a procedure for the exercise of the power of eminent domain in the taking of property for public use in the construction and reconstruction of State Trunk and Interstate Highways Systems. The procedure is patterned somewhat after that provided for condemnation of property under the power of eminent domain in the federal courts. Rule 71A, Federal Rules of Civil Procedure. There is no provision in the 1963 statute which could be construed as consent to or authorizing the maintenance of suits against the state except where a "substantial deviation by the Highway Department from the written memoranda or agreement, plans and descriptions * * * amounts to an additional taking or damage." No such situation is here presented. The statute does not authorize a landowner to commence a condemnation proceeding which the state could have commenced against him, but failed to institute.

The court has receded from the majority opinion in Darnall v. State, 79 S.D. 59, 108 N.W.2d 201, holding that a landowner has a right of action in the Supreme Court for loss of access to a highway. SDC 1960 Supp. 33.0604. The majority stresses a number of reasons for the reversal of such holding including inadequacy of the remedy, the unreasonable requirement of a specific appropriation out of which to pay the claim and improper forum for determination of fact issues. The irony of this reasoning is that no question of validity or adequacy of remedy is presented. The provisions of SDC 1960 Supp. 33.0604 giving consent by the state to be sued upon claims disallowed by the state auditor were never intended in my opinion to embrace an action in the nature of a condemnation proceeding. This statute is of early origin having been enacted at the first session of the legislature after statehood. Chapter 1, Laws 1890. From its inception until the decision in the Darnall case it had been regarded as a claims statute authorizing the bringing of an action in the Supreme Court upon a claim disallowed by the state auditor and for the payment of which there are funds appropriated. Sigwald

v. State, 50 S.D. 37, 208 N.W. 162. Plaintiffs herein filed with the state auditor a claim allegedly arising out of the damaging of their property in the amount of $75,000. An eminent domain proceeding admittedly is not the mere enforcement of a claim disallowed by the state auditor and for the payment of which an appropriation has been made. The assessment and awarding of compensation for property taken or damaged are judicial in nature. To hold otherwise, the auditor would have been authorized to issue a warrant for the amount of the claim without notice to parties affected and opportunity to be heard.

The question whether the constitution affords a remedy for the taking or damaging of private property for public purposes is not one of first impression in this court. Hyde v. Minnesota D. & P. Ry. Co., 29 S.D. 220, 136 N.W. 92, 40 L.R.A.,N.S. 48; Alcorn v. Edmunds County, 59 S.D. 512, 241 N.W. 323; La Fleur v. Kolda, 71 S.D. 162, 22 N.W.2d 741. In the course of his opinion in the Hyde v. Minnesota D. & P. Ry. Co., supra, Judge Whiting said: "The fact, however, remains that the right to recover damages, whether the injury flows from a 'taking' or a 'damaging' of the property, is a right not coming from the Constitution; the only effects of the constitutional provisions being to prevent the Legislatures from depriving the people of such right, and granting the right, under Constitutions such as ours, of preventing the 'taking' or 'damaging' until the recompense is made. We think there can be no question but that the including of the words 'or damaged' does not broaden the effect of the constitutional provision over what it would be were the word 'taken' alone used and the word 'property' given its broad meaning * * * and that the including of such words does not extend the right of recovery to include that for any injury for which damages could not have been recovered at common law." In harmony with these views, the court concluded that the Constitution does not create a new liability or afford a remedy. Rejecting holdings to the contrary, it was observed: "From the reading of many of the decisions, it would seem that the courts have frequently held that the right of action to recover damages rested upon constitutional provisions similar to the above. Such holdings are certainly erroneous."

The failure of the legislature to provide a suitable remedy to enforce a claim against the state is no argument in favor of a self-executing construction. Immunity from suit acts as a barrier even though a landowner is entitled ordinarily to enforce liability for damages to his property in a common law action. The question then is not one of immunity from liability, but immunity from suit.

I subscribe to the conclusion of the majority that experience has demonstrated the need and desirability of trial and adjudication in the circuit courts of claims against the state for damages resulting from the taking or damaging of private property for public purpose. But I must say with deference that the constitution in my opinion cannot be construed as the majority would have it. The legislature has the constitutional authority and responsibility to designate "in what manner and in what courts suits may be brought against the state" and to impose such conditions and limitations as public policy may seem to dictate. Goodhope v. State, 50 S.D. 643, 211 N.W. 451; Barnsdall Refining Corp. v. Welsh, 64 S.D. 647, 269 N.W. 853. If in this proceeding the court has not applied but made law, it is in the sense of result and expediency good law, but I cannot escape the conclusion that we have invaded the province of the legislature.

In Dougherty v. Vidal, 37 N.M. 256, 21 P.2d 90, the court considered the question of remedy under comparable constitutional and statutory provisions. The court there said:

"Both legally and practically we consider the state's immunity from suit too important a matter to be trifled with. 'A sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.' Mr. Justice Holmes, in Kawananakoa v. Polyblank, 205 U.S. 349, 27 S.Ct. 526, 527, 51 L.Ed. 834. The Legislature, not to mention the courts, should proceed slowly and with caution in subjecting the state itself to the exigencies of litigation. Langford v. United States, 101 U.S. (11 Otto) 341, 25 L.Ed. 1010.

"Moreover, a question of jurisdiction arises. This court is the creature of the sovereign state. It can have no natural or presumptive jurisdiction over its creator. Such jurisdiction as we have over the state we must trace to the Constitution or to that branch of government which declares the state's public policy. In the absence of plain consent, to entertain a suit against the state is judicial usurpation.   *   *   *

"We have said so much because of appellant's insistence upon his remediless situation as against an invasion of his constitutional right—a matter to which no court should turn a deaf ear. We are warned, however, that one branch of government may not safely or wisely carry its zeal for the rights of the citizen so far as to encroach upon the functions of a co-ordinate branch. The courts cannot act in a case like this without impairing or destroying the salutary immunity from suit. The Legislature can act in the particular case or by general provision, and with proper regard for the public interest. The Legislature is no doubt as sensitive to injustice as the courts. By unsound or specious reasoning we might arrive at rough justice in a particular case. More often we could do nothing. It is better that all understand that the legislative responsibility is undivided."

Legislative consent to suits against the state has been cautiously and restrictively granted. SDC 1960 Supp. 33.0403 contained in a chapter entitled "Parties to Action" provides that the state may be sued and made a party in quieting title and certain other related actions. The legislature recognizing sovereign immunity from suit has provided a procedure for the investigation of claims arising on contract or tort against the state and for the payment of which there are no available appropriations. The senior circuit judge in a county in which a claim is filed acting as a commissioner of claims is empowered to hear and consider evidence and make findings and recommendations to the legislature. SDC 1960 Supp. 33.43. As indicated, the legislature in the statute (Ch. 195, Laws 1963) implementing the amended

eminent domain section of the constitution did not consent to the bringing of damage suits against the state by landowners with the exception of claims for additional taking or damaging caused by deviations from agreements or plans. The legislature has by the statute (SDC 1960 Supp. 33.0604) here considered conferred original jurisdiction in this court in an action which could not otherwise be maintained to compel the state auditor to issue a warrant on the state treasurer when there are funds appropriated for its payment and there is no justification for the auditor's refusal.

It requires an act of the legislature to authorize the expenditure of state funds. Barnsdall Refining Corp. v. Welsh, supra. In the language of the constitution, "no warrant shall be drawn upon the state treasurer except in pursuance of an appropriation for the **specific purpose first made."** Sec. 9, Art. XI, Constitution; Sigwald v. State, supra. I do not understand the majority opinion to hold that the self-executing construction of the eminent domain section of the constitution dispenses with the necessity of an appropriation to render effective the payment of an award in an inverse condemnation proceeding. In other words, the remedy which now prevails in the circuit court does not to that extent provide redress without legislative action.

In directing payment then of an award, the court must first determine whether funds are specifically made available. In Darnall v. State, supra, there is dictum to the effect that the state cannot evade the constitutional provision which guarantees the right to compensation and is obliged to make payment of a judgment rendered in an inverse condemnation proceeding. It does not follow that the state auditor may issue a warrant for its payment when there are no funds made available by appropriation for the specific purpose. Plaintiff in that case did not prevail, but in the present proceeding the payment of an award has been ordered.

The pertinent provisions of SDC 1960 Supp. 28.13A01 as amended by Ch. 135, Laws 1965, providing for acquisition of right of way and payment by the State Highway Commission, read:

"That from and after the effective date of this act, whenever any **land or lands, easement in same or material** is necessary for right of way in order to make a safe or proper grade, or for widening, changing, relocating, constructing, reconstructing, maintaining or repairing any portion of the State Trunk Highway, or whenever it is necessary for providing cut slopes, borrow pits, channel changes, or to afford unobstructed vision on said State Trunk Highways and at any point of danger to public travel, for **right of way and borrow pit,** the state of South Dakota, through and by its State Highway Commission \* \* \* **shall acquire and pay for same out of state highway funds** \* \* \* **The cost of said land or material and expense of purchase or condemnation shall be paid as part of the cost of the State Trunk Highway."**

A reasonable interpretation of the statute in my opinion is that the term "right of way" refers to the physical property over which a highway extends. Alcorn v. Edmunds County, 59 S.D. 512, 241 N.W. 323.

Admittedly, the state did not acquire any "land or lands, easement in same or material" for right of way. This is not to say, however, that the deprivation of access which may be appurtenant to abutting property does not come within the prohibition contained in the eminent domain section of the constitution. We have before us a statute authorizing acquisition by the state of right of way for construction, reconstruction and maintenance of highways and appropriating state highway funds specifically for the payment of such property and consequential damages caused by such taking for right of way. State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W.2d 572. The statute does not provide that there shall be ascertainment and payment of damages that may be caused to an abutting property owner as a condition precedent to the reconstruction of an existing right of way or conversion into a limited-access highway and the State Highway Commission is not authorized to adjust and order payment of such damages. As in the case of damages for breach of contract, the statute does not specifically

appropriate money for the payment of damages to abutting owners for loss of access. Kansas City Bridge Co. v. State, 61 S.D. 580, 250 N.W. 343; Griffis v. State, supra; Cuka v. State, 80 S.D. 232, 122 N.W.2d 83. It can be aptly stated that the legislature has been consistent and has made clear its intention which is all important in statutory interpretation. It has neither consented to suit by an abutting owner nor otherwise provided a method of ascertainment of damages of the nature herein claimed and accordingly has not made funds available for payment. The legislature may make such provisions for suits in cases of injuries caused by state activities as its wisdom dictates and impose reasonable conditions and limitations. Where there is no judicial or other remedy as in the present proceeding, the legislature must be looked to directly for relief.

Since the claim of plaintiffs is adjustable only by the legislature, the proceeding should in my opinion be dismissed.