#28352-a-JMK
**2018 S.D. 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JIMMY KRSNAK and
LINDA L. KRSNAK,        Plaintiffs and Appellants,

     v.

BRANT LAKE SANITARY
DISTRICT,        Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE VINCENT A. FOLEY
Retired Judge

\* \* \* \*

R. SHAWN TORNOW
Sioux Falls, South Dakota        Attorney for plaintiffs
       and appellants.


JOEL R. RISCHE
VINCE M. ROCHE of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota        Attorneys for defendant
       and appellee.

\* \* \* \*

ARGUED OCTOBER 1, 2018
OPINION FILED **12/19/18**

KERN, Justice

[¶1.]     The Brant Lake Sanitary District (the District) built an additional sewage lagoon to process wastewater from the Brant Lake area.  The Krsnaks, who live a short distance from the new pond, brought an action against the District alleging a taking or damaging of their property and nuisance.  The circuit court granted the District's motion for summary judgment on all claims.  The Krsnaks appeal.  We affirm.

## Facts and Procedural History

[¶2.]     The District designed and constructed a treatment pond to service the increase in wastewater flow in the Brant Lake area.  This new pond, referred to as the Brant Lake Sanitary District pond (BLSD pond), connected into two previously existing treatment ponds operated by the Chester Sanitary District.

[¶3.]     Jimmy and Linda Krsnak own 8.27 acres of property approximately 675 feet north of the new water treatment pond and 1,100 feet from the existing ponds.  Linda has operated a vegetable farm called "Linda's Gardens" from the property since 2005.  The Krsnaks also have a sixty-foot well on their land, which they use to water crops for the business.  They opposed construction of the BLSD pond and brought several lawsuits hoping to stop the project.

[¶4.]     In 2011, the Krsnaks appealed to the circuit court the Lake County Board of Adjustment's decision to grant the District a conditional use permit to build the pond.  In a memorandum decision dated June 28, 2011, the circuit court dismissed their action for failing to meet the statutory requirements for contesting such a decision.  *See* SDCL 11-2-61 to -65.  Next, the Krsnaks filed a petition for a writ of mandamus to compel the South Dakota Department of Environmental and

Natural Resources (DENR) to stay construction of the pond. In that action, the Krsnaks argued DENR did not comply with existing legal requirements when it approved the BLSD pond. Specifically, they asserted that DENR violated SDCL 34A-2-27 to -29, administrative rules (ARSD 74:53:01), and its own internal guidelines set forth in the Recommended Design Criteria Manual for Wastewater Collection and Treatment Facilities. The circuit court denied the petition for writ of mandamus and, on appeal, we affirmed. *See Krsnak v. S.D. Dep't of Env't & Nat. Res.*, 2012 S.D. 89, ¶ 23, 824 N.W.2d 429, 438.

[¶5.]       In May 2012, around the same time the Krsnaks petitioned for writ of mandamus, they also filed the present action. They alleged in their complaint that the District's new pond violated: (1) SDCL 21-10-1, the general nuisance statute; (2) SDCL 34A-2-21's prohibition against pollution of state waters; and (3) a Lake County ordinance. On July 2, 2012, the District moved to dismiss, arguing the nuisance violations were premature because the pond was not yet constructed. In the interim, the Krsnaks filed an amended complaint seeking a declaratory judgment and bringing an additional claim of inverse condemnation along with their nuisance claim. In the Krsnak's view, because they filed an amended complaint after the District moved to dismiss, the District's motion was moot because it targeted their original complaint rather than the amended version.

[¶6.]       On December 31, 2012, the circuit court denied the District's July 2012 motion to dismiss, suggesting the denial was an "invitation for further evidence"

from the Krsnaks regarding their water seepage claims.[1]  The District filed an answer in January 2013, denying the allegations set forth in the Krsnaks' amended complaint and asserting the affirmative defenses of res judicata and collateral estoppel.  It also argued the Krsnaks' case should be dismissed under the doctrine of stare decisis.

[¶7.]      Sometime in late 2012 or early 2013, the BLSD pond went into operation.  Soon after, the Krsnaks and their neighbors began reporting stronger odors emanating from the pond than from the existing Chester system.  In April 2014, the District deposed Linda and Jimmy Krsnak.  During his deposition, Jimmy Krsnak stated the odor "has actually made us physically ill.  We've had odor so bad that we just had to leave the place."

[¶8.]      After the depositions, however, the litigation stagnated for more than two years.  The District sent the Krsnaks a letter asking for supplemental discovery responses on April 9, 2014.  Even though the parties exchanged several emails between June 2014 and January 2015, the Krsnaks did not produce the discovery.  The District moved to dismiss for failure to prosecute on May 29, 2015.  The circuit court denied the motion.

[¶9.]      Meanwhile, in early 2015, the Krsnaks retained an expert to appraise the value of their property before and after construction of the BLSD pond.  The appraiser concluded that their property suffered a diminution in value of $82,800.00 because of the new sewage pond.  The appraiser noted the pond's proximity to the

---

1.     The court issued a lengthy memorandum opinion which is not included in the record.

Krsnaks' house, the odor, and its size. According to the report, these factors diminished the property's value and negatively impacted its marketability.

[¶10.] On June 6, 2016, the District moved for summary judgment regarding the Krsnaks' inverse condemnation claim, arguing no evidence existed that the BLSD pond contaminated their property or injured them in a peculiar or distinctive way compared to the public at large. The District also moved for summary judgment on the nuisance claim, alleging that the pond could not be classified as a nuisance because the District acted within its statutory authority when it constructed the pond. Finally, the District requested summary judgment on the Krsnaks' declaratory judgment claim because it presented no distinct issues of substantive law.

[¶11.] In response, the Krsnaks argued that genuine issues of material fact existed regarding the unique injury the Krsnaks suffered by enduring the bigger and more odorous BLSD pond. According to Linda Krsnak's deposition, "[n]o other owner [was] as close . . . ." to the new pond. Additionally, the Krsnaks argued they offered "uncontroverted factual testimony" that Linda's Gardens "suffered a unique and peculiar injury not of a kind suffered by the general public in and around Chester." According to the Krsnaks, their injury was unique because no other person in the area operated a commercial gardening business that close to the new pond. They also alleged that fecal matter from the pond was contaminating their well.

[¶12.] In a short letter opinion granting the District's motion for summary judgment, the court explained that while it had denied the District's previous

motion to allow for further discovery, the Krsnaks, in the years that followed, had failed to produce evidence of "water seepage impacts" to their property. Further, the court disregarded as speculative the Krsnaks' argument that their proximity to the pond made their business ineligible for GAP certification,[2] presumably because the Krsnaks had never attempted to certify.

[¶13.] Finally, the circuit court, citing *Krier v. Dell Rapids Township*, concluded that even if the Krsnaks suffer a heightened injury due to the smell and their proximity to the pond, their injury was neither unique nor constituted a nuisance. *See* 2006 S.D. 10, ¶ 28, 709 N.W.2d 841, 847–48 (holding a plaintiff in an inverse condemnation action must establish an injury to property "different in kind and not merely in degree from that experienced by the general public."). The Krsnaks appeal, raising two issues that we consolidate as follows:

> *Whether the circuit court erred by granting the District's motion for summary judgment on the Krsnaks' inverse condemnation and nuisance claims.*

## Analysis and Decision

[¶14.] Our summary judgment standard is well-established. Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). All reasonable inferences derived from the facts are viewed in the light most favorable to the nonmoving party.

---

2. "GAP" stands for Good Agricultural Practices. The United States Department of Agriculture audits agricultural producers to determine whether they qualify for GAP certification based on food safety practices.

*Northstream Invs. v. 1804 Country Store Co.*, 2005 S.D. 61, ¶ 11, 697 N.W.2d 762, 765.

### The inverse condemnation claim

[¶15.]    "[I]n any takings case, the determination whether a property interest was taken or damaged for public use is a question of law for the court." *Dep't of Transp. v. Miller*, 2016 S.D. 88, ¶ 43, 889 N.W.2d 141, 154.  If the court decides a taking or damaging of property occurred, the parties may request that a jury resolve their claim for just compensation and affix damages.  *See Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 6, 827 N.W.2d 55, 60.  On appeal, an alleged violation of constitutional rights—such as whether a sufficient inverse condemnation claim exists—"is an issue of law to be reviewed under the de novo standard."  *Id.* ¶ 8, 827 N.W.2d at 66.

[¶16.]    The Krsnaks begin by challenging the circuit court's summary judgment order dismissing their inverse condemnation claim.  In the realm of eminent domain, the Constitution of the United States commands that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  Takings jurisprudence at the federal level involves, at a minimum, two distinct categories of deprivations: (1) physical occupations of land; or (2) regulatory takings.  *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893, 120 L. Ed. 2d 798 (1992).

[¶17.]    The South Dakota Constitution enlarges these protections, instructing "[p]rivate property shall not be taken for public use, *or damaged*, without just compensation . . . ."  *See* S.D. Const. art. VI, § 13 (emphasis added); *Krier*, 2006 S.D.

10, ¶ 21, 709 N.W.2d at 846. The primary purpose of the "'[damages] clause is to ensure that individuals are not unfairly burdened by disproportionately bearing the cost of projects intended to benefit the public generally.'" *Rupert*, 2013 S.D. 13, ¶ 9, 827 N.W.2d at 61 (quoting *Hall v. S.D. Dep't of Transp.*, 2011 S.D. 70, ¶ 37, 806 N.W.2d 221, 230).

[¶18.] The Krsnaks argue the circuit court erred because questions of fact exist regarding their inverse condemnation claim, which precludes summary judgment at this stage. Specifically, the Krsnaks contend there are factual disputes regarding: (1) their unique injury with respect to the smell; (2) the peculiar injury inflicted on their business, 'Linda's Gardens'; and (3) the high levels of coliform found in their well.

[¶19.] With reference to their first argument regarding the odor, the Krsnaks claim their proximity to the BLSD pond—675 feet—renders their injury sufficiently unique to mandate just compensation. As support for this contention, they rely upon *Hurley v. State*, in which we considered whether a state-created barrier impairing the plaintiffs' access to a road adjoining a property constituted a taking. 82 S.D. 156, 159, 143 N.W.2d 722, 723 (1966). In *Hurley*, we noted that, under certain circumstances, "'a landowner may claim compensation for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights . . . .'" *Id.* at 161, 143 N.W.2d at 725 (quoting 2 Nichols on Eminent Domain § 6.44).[3]

---

3. The Krsnaks also analogize sewage smell to the intrusion of airspace by airplanes. *See Lawrence Cty. v. Miller*, 2010 S.D. 60, ¶¶ 31–32, 786 N.W.2d

(continued . . .)

[¶20.] In response, the District relies upon our decision in *Krier*. In *Krier*, we reviewed a landowner's claim for just compensation for injury suffered from dust drifting onto his property from a newly graveled road. 2006 S.D. 10, ¶¶ 27–28, 709 N.W.2d at 847–48. When arguing that his injury was unique from that of his neighbors, Krier argued that his residence was the only house that existed prior to the gravel road. Thus, he claimed, he alone suffered a decrease in property value. *Id.* ¶ 28, 709 N.W.2d at 848. We disagreed, holding Krier shared his injury— namely, the dust from the road—with his neighbors. The simple fact that he suffered the injury to a greater degree was not enough to establish a taking or damaging claim. *See id.* ¶ 26, 709 N.W.2d at 848–49 (citing *State Highway Comm'n v. Bloom*, 77 S.D. 452, 461, 93 N.W.2d 572, 577 (1958); *Hurley*, 82 S.D. at 162, 143 N.W.2d at 726).

[¶21.] In the District's view, our holding in *Krier* is directly on point and controlling—the only variation being that this case involves odor rather than dust. The District also emphasizes that the smell from the existing Chester treatment ponds invaded the air in the area surrounding the Krsnaks' property long before the

---

(. . . continued)

360, 371–72 (affirming summary judgment against a landowner who failed to establish an invasion of an airspace easement over the property.) The District argues the Krsnaks' analogy between odor and airplane intrusions is unpersuasive because, unlike odor emanating from a pond, airplane intrusions involve actual physical occupation of airspace. *See id.* We agree that *Lawrence County* is unpersuasive here. In that case, although we acknowledged that noise resulting from overhead airplane traffic might rise to the level of a taking or damaging, we noted that the plaintiffs had established neither "actual intrusion upon the . . . acreage" nor evidence that the airport would permit larger aircrafts from using the runway." *Id.* ¶15, 786 N.W.2d at 367.

BLSD pond was constructed. Therefore, the District contends it is immaterial whether the BLSD pond increases the repulsive odor in the air.

[¶22.]	As set forth in *Hurley*, the deprivation of certain property interests, such as road access, might rise to the level of a taking or damaging of property for public use. 82 S.D. at 160, 143 N.W.2d at 724. However, in *Hurley* we explained that "'[t]he damage to [the landowner] must be *different* in kind and not merely in degree from that experienced by the general public.'" *Id.* at 163, 143 N.W.2d. at 726 (quoting *Hendrickson v. State*, 127 N.W.2d 165, 170 (Minn. 1964)) (emphasis added). The plaintiffs' injury in *Hurley* was unique because the barrier obstructed the owner's access to a major street, and the owners intended to market the property for use as an automobile service station. *Id.* at 159, 143 N.W.2d at 724. As a consequence, we concluded the owner's rights, as an abutting landowner, were "peculiar, distinct, and separate . . . from . . . the general public . . . ." *Id.*

[¶23.]	*Hurley*'s requirement that an injury be unique is consistent with our decision in *Krier*. The mere fact that the Krsnaks' house is closer to the BLSD pond than any other landowner's does not necessarily create a unique injury. *See Krier*, 2006 S.D. 10, ¶ 28, 709 N.W.2d at 848 ("The fact that a plaintiff suffers a higher degree of injury or damages will not entitle him to recovery under the consequential damages rule."). Many landowners surrounding the treatment pond wrote letters opposing the pond's construction and complained of the odor emanating from the ponds. While we acknowledge that in this case, the Krsnaks suffer a heightened injury due to the location of their house, under the facts contained in this record, this circumstance alone does not render their injury unique or peculiar.

[¶24.] Additionally, the Krsnaks contend that their injury is peculiar because the pond has adversely impacted their economic interest in Linda's Gardens. They maintain that they are unable to become GAP certified because of the pond's location next to their gardening operation. However, even if the pond's proximity renders the Krsnaks ineligible for GAP certification, the District argues this does not change the character of the injury, only the economic consequences arriving therefrom. *See id.* (explaining that arguments focusing solely on diminished property value confuses the type of injury with the amount of damages).

[¶25.] In this instance, we agree. Similar to the odors suffered by the community-at-large, a decrease in the economic value of the Krsnaks' property as compared to other properties does not, in and of itself, rise to the level of a taking or damaging. Further, the Krsnaks neither attempted to become GAP certified nor provided evidence that their proximity to the sewage pond precluded them from obtaining certification.[4] Therefore, we need not address whether the GAP certification is sufficiently peculiar due to the speculative nature of their claim.

[¶26.] The final question of material fact alleged by the Krsnaks is whether the District took a portion of the Krsnaks' property—specifically, their well water—without just compensation by contaminating it with fecal matter. The Krsnaks rely on *Parsons v. City of Sioux Falls*, which held that an actual physical occupation and intrusion occurred when a city discharged sewage upstream of the plaintiff's riparian property. 272 N.W. 288, 291 (S.D. 1937)*; see also Gellert v. City of*

---

4. When asked why they never attempted certification, the Krsnaks stated the process was too expensive, and they did not believe they could comply with the requirements.

*Madison*, 210 N.W.2d 978, 978 (1926); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434–35, 102 S. Ct. 3164, 3175–76, 73 L. Ed. 2d 868 (1982) (holding neither "the extent of the occupation" nor its "minimal economic impact" is relevant—any permanent physical governmental occupation constitutes a taking).

[¶27.]     The Krsnaks assert they have presented a genuine issue of material fact regarding the source of dangerously high rates of coliform in their 60-foot well, as evidenced by laboratory testing of the water between 2013 and 2015.  They focus on evidence establishing that in August 2014, the total coliform level of the well water was 225 times the caution level, which far exceeds the Environmental Protection Agency's limit.  The toxic coliform levels, the Krsnaks argue, originate from the BLSD pond.

[¶28.]     In contrast, the District's statement of undisputed material facts alleged that "there is no evidence that sewage is seeping from the BLSD [l]agoon onto [the property] or into the Krsnaks' well."  The District relies on Jimmy and Linda Krsnaks' deposition testimony, in which they each conceded they had no proof that the BLSD sewage was seeping into their well.  The District also points to Linda Krsnak's statement that she never saw sewage flowing from the BLSD pond onto their land.

[¶29.]     Based on our review of the record, the Krsnaks have only shown that unsafe levels of coliform exist within their well.  The reports created by Midwest Laboratories, Inc., summarized the water quality following the BLSD pond's construction but failed to present any relationship between the pond and the well's coliform content.  Those documents, which analyze the water from 2013 to 2015,

demonstrate the ebb and flow of the well's coliform levels *after* the pond's construction. No evidence within this record establishes the source of the coliform or whether the well contained coliform before construction of the BLSD pond. Additionally, the Krsnaks' appraisal evaluated only the economic impact the pond had on their property, concluding its proximity and smell negatively impacted the land's marketability and value. The appraisal did not address the coliform in the well or the possible cause of the contamination. Thus, the Krsnaks have not presented evidence of causation.

[¶30.] Considering the foregoing facts and arguments, the Krsnaks have failed to present a claim of inverse condemnation. *See Bordeaux v. Shannon Cty. Sch.*, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127 (noting that a party resisting summary judgment must present facts rather than "[u]nsupported conclusions and speculative statements . . . [that] do not raise a genuine issue of fact.") Although they have established that fecal matter contaminates their well water, they have not shown a governmental entity caused the invasion. Their suspicion that the coliform in their well originated from the BLSD pond, without evidence of the source of the contamination, merely raises unsupported conclusions and speculation. *See Long v. State*, 2017 S.D. 79, ¶ 23, 904 N.W.2d 502, 511 ("[T]he duty to show both actual and proximate causation is implicit in inverse condemnation.") The circuit court did not err in dismissing the Krsnaks' claim for inverse condemnation.

*The nuisance claim*

[¶31.] Next, the Krsnaks argue the circuit court erred by granting the District's motion for summary judgment on their nuisance claim. The Krsnaks contend that the depositions, affidavits, and exhibits in the record demonstrate that the BLSD pond creates an "unlawful nuisance" by contaminating their air, impeding their business venture, and secreting sewage into their well. The District contradicts their assertions, stating that "the Krsnaks [did] not identify a single applicable statute or regulation they claim the District violated and thereby created a nuisance."

[¶32.] Sanitary districts are specifically authorized by statute. *See* SDCL 34A-5-26(4). "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." SDCL 21-10-2; *see Kuper v. Lincoln-Union Elec. Co.*, 1996 S.D. 145, ¶ 47, 557 N.W.2d 748 761 ("[O]ur legislature has . . . made it quite clear that a public utility cannot be designated a nuisance."). Accordingly, to overcome the District's motion for summary judgment, the Krsnaks must present evidence that the District engaged in some act or omission that violated its statutory authority. *See Kuper*, 1996 S.D. 145, ¶ 47, 557 N.W.2d at 761. Pursuant to SDCL 21-10-1, for an actionable claim, the District must be unlawfully engaged in "an act, or omitting to perform a duty, which act or omission either . . . [a]nnoys, injures, or endangers the comfort, repose, health, or safety of others[,]" or "renders other persons insecure . . . in the use of property."

[¶33.] Like their inverse condemnation claim, because the Krsnaks did not present evidence that the BLSD pond is unlawfully contaminating their well, their

claim must fail.  *See* SDCL 34A-5-26(4) (authorizing sanitary districts to maintain and operate sewage disposal plants); SDCL 21-10-2.  In light of the fact that the legislature authorized sewage districts for public benefit, upon review of the evidence presented in this case, the Krsnaks have failed to establish a cause of action based upon nuisance.  Thus, the circuit court did not err in granting the District's motion for summary judgment.

[¶34.]        We affirm.

[¶35.]        GILBERTSON, Chief Justice, and JENSEN and SALTER, Justices, concur.